NOTICE

Decision filed 02/11/10. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-08-0247

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| MARGIE KAISER and LAMAR KAISER, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiffs-Appellees, | ) St. Clair County. |
| | ) |
| v. | ) No. 07-L-564 |
| | ) |
| DR. A. DOLL-POLLARD and SOUTHERN | ) |
| OBSTETRICS AND GYNECOLOGICAL | ) |
| ASSOCIATES, S.C., | ) Honorable |
| | ) Lloyd A. Cueto, |
| Defendants-Appellants. | ) Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the opinion of the court:

This appeal involves a motion to transfer a medical malpractice action from St. Clair County to Clinton County based on improper venue. Plaintiff Margie Kaiser (the plaintiff) underwent a hysterectomy at St. Joseph's Hospital in Clinton County but was transferred to St. Elizabeth's Hospital in St. Clair County for postoperative care. The defendants, the doctor who performed the hysterectomy and her employer, appeal an order denying their motion to transfer. They argue that venue in St. Clair County is not proper because (1) the plaintiff does not allege that the defendants committed any negligent acts in St. Clair County and (2) all the elements of the plaintiff's cause of action arose in Clinton County. We affirm.

On December 15, 2005, defendant Dr. Anne Doll-Pollard (the defendant) performed a hysterectomy on the plaintiff. The surgery was performed at St. Joseph's Hospital, which is located in Clinton County. According to the allegations in the complaint, the defendant's operative notes indicate that she "noted the existence of bleeding" and attempted to locate the source of the bleeding but that she closed the patient despite the fact that the bleeding was

1

still occurring. After the surgery, the plaintiff's blood pressure and hemoglobin count dropped while her white blood cell count rose. Her condition continued to deteriorate. Later that day, a cardiologist transferred the plaintiff to St. Elizabeth's Hospital in St. Clair County. There, doctors performed exploratory surgery, during which they found the source of the bleeding. Although the doctors were able to stop the bleeding, the plaintiff alleges in her complaint that she suffered permanent injuries as a result of complications.

On December 13, 2007, the plaintiff and her husband, Lamar Kaiser, filed a complaint against the defendant and her employer, Southern Obstetrics and Gynecological Associates, S.C. The complaint alleged that the defendant was negligent both in her performance of the surgery and in failing to diagnose the plaintiff's condition following the surgery. According to the complaint, the plaintiff suffered ongoing complications as a result of infection and a loss of oxygen to her brain and other organs. In addressing the question of venue, the complaint alleged that venue was proper in St. Clair County because the diagnosis and treatment had occurred there, thereby making it a county in which a part of the transaction that formed the basis of the action had occurred. See 735 ILCS 5/2-101 (West 2006).

On January 17, 2008, the defendants filed a motion to transfer the case to Clinton County on the basis of improper venue or, alternatively, on the basis of *forum non conveniens*. The defendants argued that because the plaintiff did not allege that the care she had received in St. Clair County was negligent, no part of the transaction occurred there. They further argued that some action by the defendants must occur in a county for venue to be proper there. We note that although *forum non conveniens* was raised in the trial court, the parties apparently did not conduct discovery on the issue, and the trial court did not rule on it. Only venue is at issue in this appeal.

On January 28, the plaintiffs filed their response to the defendants' motion. They argued that the statutory language providing that venue is proper in any county where "some

2

part" of the transaction at issue occurred (see 735 ILCS 5/2-101 (West 2006)) makes transactional venue a flexible doctrine. See *Tipton v. Estate of Cusick*, 273 Ill. App. 3d 226, 228, 651 N.E.2d 635, 637 (1995). They cited previous medical malpractice cases in which venue was found to be proper in counties even though the plaintiffs had not alleged they had received negligent care in those counties. *Smith v. Silver Cross Hospital*, 312 Ill. App. 3d 210, 726 N.E.2d 697 (2000); *Bradbury v. St. Mary's Hospital of Kankakee*, 273 Ill. App. 3d 555, 652 N.E.2d 1228 (1995); *Tipton v. Estate of Cusick*, 273 Ill. App. 3d 226, 651 N.E.2d 635 (1995). In addition, the plaintiffs argued that venue was proper in St. Clair County because some of the plaintiff's injuries resulted from the surgery she underwent there to find and stop the bleeding.

On February 7, 2008, the defendants filed a reply. They argued that the cases cited by the plaintiffs were distinguishable. *Smith* and *Bradbury* involved wrongful death actions, while in *Tipton*, the plaintiff alleged that he suffered a stroke as a result of taking a medication in Cook County which had been prescribed elsewhere. The defendants argued, as they do in this appeal, that the causes of action involved in all three cases did not exist until an event occurred in the plaintiffs' chosen counties–the causes of action in *Smith* and *Bradbury* did not arise until the decedents died, and the cause of action in *Tipton* did not exist until the plaintiff took the medication and suffered a stroke. *Smith*, 312 Ill. App. 3d at 213-15, 726 N.E.2d at 700-02 (following *Bradbury* and finding that the decedent's death in Cook County was sufficient to establish venue there); *Bradbury*, 273 Ill. App. 3d at 558, 652 N.E.2d at 1230 (explaining that the place a plaintiff was wronged is the place "where the last event takes place which is necessary to render the [defendant] liable"); *Tipton*, 273 Ill. App. 3d at 228, 651 N.E.2d at 637 (finding that the plaintiff's act of ingesting a medication alleged to have triggered the stroke that caused his injuries was a part of the transaction forming the basis of his cause of action).

3

On April 3, 2008, the court entered an order denying the defendants' motion to transfer. The court did not include any factual findings or express legal analysis in its order. This interlocutory appeal followed.

Venue is proper in any county in which any defendant joined in good faith resides or in any county "in which the transaction or some part thereof occurred out of which the cause of action arose." 735 ILCS 5/2-101 (West 2006). Here, it is undisputed that neither defendant resides in St. Clair County. Thus, only the second prong of the venue statute, the "transactional" prong, is at issue.

Before considering the merits of the defendants' appeal, we must resolve the parties' contentions regarding the standard of review to apply. Often, venue motions present mixed questions of law and fact. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 153-54, 839 N.E.2d 524, 530 (2005). We review the factual determinations made by the trial court to determine whether they are against the manifest weight of the evidence. However, we review the court's conclusions of law *de novo*. *Corral*, 217 Ill. 2d at 154, 839 N.E.2d at 530. Where there is no dispute regarding the facts underlying the court's decision, we review the entire ruling *de novo*. *Corral*, 217 Ill. 2d at 153, 839 N.E.2d at 530.

The defendants argue that the court below denied their motion based on "agreed" facts and did not make any findings of fact. Thus, they contend, our review is *de novo*. The plaintiffs, however, contend that the court "must have" made findings it did not articulate in its order, because whether any portion of the transaction occurred in St. Clair County is a factual question on which the parties disagree. They thus contend that the proper standard of review is the manifest-weight-of-the-evidence standard. They further contend that because it is impossible to determine on the record before us what factual determinations the court made, we must resolve in their favor any doubts raised by this gap in the record. See *Corral*, 217 Ill. 2d at 157, 839 N.E.2d at 532 (explaining that, when the record is incomplete,

4

an appellate court "must presume" that a trial court "had a sufficient factual basis for its holding and that its order conforms with the law").

We agree with the defendants. At the pleading stage, we take all well-pled facts in the plaintiff's complaint as true. *Safeway Insurance Co. v. Daddono*, 334 Ill. App. 3d 215, 218, 777 N.E.2d 693, 695 (2002). Thus, we assume that the plaintiff received negligent care in Clinton County and postoperative care in St. Clair County. We assume that the plaintiff suffered injuries as a result of blood loss and infection. We assume that the blood loss began, as alleged, during the surgery performed in Clinton County, and we assume it continued, as alleged, until surgeons in St. Clair County were able to locate the source of the bleeding and stop it. The question before us is not whether these allegations are true. Rather, the question is whether the facts that the plaintiffs alleged took place in St. Clair County formed a "part" of the transaction. In other words, we are asked to determine whether the court below correctly determined the legal effect of the facts pled by the plaintiffs. That is a legal question. We will therefore review the defendants' contentions *de novo*.

As previously stated, the sole issue before us is whether venue is proper under the transactional prong of our venue statute. Determining venue under this prong requires us to consider two key variables: the nature of the cause of action and the place where the cause of action sprang into existence. *Rensing v. Merck & Co.*, 367 Ill. App. 3d 1046, 1050, 857 N.E.2d 702, 706 (2006). The phrase "transaction or some part thereof" in the venue statute has been interpreted broadly. *Tipton*, 273 Ill. App. 3d at 228, 651 N.E.2d at 637. It includes all the facts that the plaintiff bears the burden of proving. *Servicemaster Co. v. Mary Thompson Hospital*, 177 Ill. App. 3d 885, 890-91, 532 N.E.2d 1009, 1012 (1988) (relying on *People ex rel. Carpentier v. Lange*, 8 Ill. 2d 437, 441, 134 N.E.2d 266, 267-68 (1956)). A plaintiff in a medical malpractice action has the burden of proving (1) the standard of care that the defendant's conduct is to be measured against, (2) that the defendant failed to comply

5

with that standard of care, and (3) that the defendant's negligent care proximately caused the plaintiff's injury. *Wiedenbeck v. Searle*, 385 Ill. App. 3d 289, 292, 895 N.E.2d 1067, 1069 (2008). Here, the plaintiffs allege that the defendant negligently performed the surgery and negligently failed to diagnose the problem of internal bleeding. In order to prove the latter allegation, they will have to demonstrate that the problem could have been diagnosed sooner than it was. See *Holston v. Sisters of the Third Order of St. Francis*, 165 Ill. 2d 150, 155, 650 N.E.2d 985, 988 (1995).

The defendants contend that venue is proper only in Clinton County because no portion of the transaction occurred in St. Clair County. This is so, they contend, because (1) the plaintiffs do not allege that the defendants committed any negligent acts in St. Clair County and (2) the plaintiff suffered an injury that gave rise to a cause of action for medical malpractice prior to leaving Clinton County. In addition, the defendants argue that their "statutory right to change venue should not be thwarted" by the plaintiffs' attempt at forum-shopping.

In support of their position, the defendants rely heavily on *Jackson v. Reid*, 363 Ill. App. 3d 271, 842 N.E.2d 763 (2006), while the plaintiffs rely primarily on *Smith*, *Bradbury*, and *Tipton*. As we will explain, we find the *Jackson* case distinguishable from the case before us despite some factual similarities, and we find that the *Tipton* case, while not precisely analogous, provides support for the plaintiffs' position.

The defendants argue that because both *Smith* and *Bradbury* involved the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2008)), they are distinguishable from the instant case. The Wrongful Death Act provides a distinct cause of action that allows survivors to recover damages they suffer as a result of their decedent's death. *Bradbury*, 273 Ill. App. 3d at 558, 652 N.E.2d at 1230. That cause of action is separate and distinct from any claim the decedent might have had for the underlying negligence had he survived. *Bradbury*, 273 Ill.

6

App. 3d at 558, 652 N.E.2d at 1230 (explaining that the Wrongful Death Act does not provide for the survival of the decedent's cause of action). Although wrongful death is a separate and distinct cause of action, it is nevertheless premised on the underlying negligence. *Bradbury*, 273 Ill. App. 3d at 558, 652 N.E.2d at 1230. Because of this, both the underlying negligence and the decedent's death are necessary to give rise to a claim. Thus, we do not agree with the defendants that the mere fact that *Smith* and *Bradbury* involved claims for wrongful death makes them inherently distinguishable. However, for reasons we will explain more fully later, we find little guidance in *Bradbury*. In addition, we find that *Smith* is inapposite for another reason. In that case, the decedent died in a Cook County hospital, but both he and the administrator of his estate (his widow) were residents of Will County. *Smith*, 312 Ill. App. 3d at 213, 726 N.E.2d at 700. The defendants sought a transfer to Will County based largely on venue provisions in the Probate Act of 1975 (755 ILCS 5/1-1 *et seq.* (West 1998)). *Smith*, 312 Ill. App. 3d at 213-14, 726 N.E.2d at 700. That is obviously not an issue in this case.

In *Jackson*, the defendant urologist treated the plaintiff over the course of four years. The defendant determined that a bilateral ureteral implantation surgery was necessary. The medical malpractice complaint alleged that the defendant was negligent in performing the surgery, in providing postoperative care, and in determining that the surgery was necessary in the first place. *Jackson*, 363 Ill. App. 3d at 273, 842 N.E.2d at 765. All the defendant's treatment of the plaintiff–including both the surgery and the postoperative care–took place in Peoria County. *Jackson*, 363 Ill. App. 3d at 273, 842 N.E.2d at 765. However, prior to determining that the surgery was necessary, the defendant had ordered several tests, including X rays and sonograms. The plaintiff went to a laboratory in McLean County for these tests. *Jackson*, 363 Ill. App. 3d at 273-74, 842 N.E.2d at 765-66. The plaintiff filed her lawsuit in McLean County, and the defendant filed a motion to transfer to Peoria County based on

7

improper venue. *Jackson*, 363 Ill. App. 3d at 272-73, 842 N.E.2d at 765.

The plaintiff there argued on appeal that venue in McLean County was proper under the transactional prong because the tests ordered by the defendant and performed in McLean County formed an "integral part" of her cause of action. *Jackson*, 363 Ill. App. 3d at 275, 842 N.E.2d at 767. In rejecting this claim, the Fourth District found it significant that all the dealings between the parties and all the acts alleged to have been negligent had taken place in Peoria County. *Jackson*, 363 Ill. App. 3d at 276-77, 842 N.E.2d at 768. The similarities with the instant case are apparent: the defendant here did not treat the plaintiff in St. Clair County, and the plaintiff does not allege that the treatment she received there was negligent. However, these similarities, standing alone, are not dispositive.

We emphasize that the *Jackson* court did not hold that the nonnegligent acts of third parties can *never* establish transactional venue. Indeed, the court acknowledged that the term "transaction" is not meant to be interpreted so narrowly "as to include only those immediate facts from which the cause of action arose." *Jackson*, 363 Ill. App. 3d at 276, 842 N.E.2d at 767. The court also acknowledged that third-party interactions can constitute a part of the transaction if they " 'have a definite and direct bearing on the cause of action.' " *Jackson*, 363 Ill. App. 3d at 276, 842 N.E.2d at 768 (quoting *Southern & Central Illinois Laborers' District Council v. Illinois Health Facilities Planning Board*, 331 Ill. App. 3d 1112, 1117, 772 N.E.2d 980, 984 (2002), *abrogated on other grounds by Corral*, 217 Ill. 2d at 149-50, 839 N.E.2d at 527-28). The court found only that the specific third-party acts at issue there–the tests performed in McLean County–were preliminary acts which, standing alone, were not enough to establish transactional venue. *Jackson*, 363 Ill. App. 3d at 276, 842 N.E.2d at 768 (citing *Lake County Riverboat L.P. v. Illinois Gaming Board*, 313 Ill. App. 3d 943, 953, 730 N.E.2d 524, 532 (2000)). We believe that this conclusion was supported by additional factors that are not present in the case before us.

8

First, in *Jackson*, the court found that the plaintiff's *entire* cause of action came into existence in Peoria County. *Jackson*, 363 Ill. App. 3d at 277, 842 N.E.2d at 768. The court explained that the defendant determined that the surgery was necessary, performed the surgery, and provided postoperative care in Peoria County. *Jackson*, 363 Ill. App. 3d at 277, 842 N.E.2d at 768. The plaintiff did not allege that the tests had been performed negligently or that she had suffered any injury as a result of having them performed. Instead, the court explained, it was the defendant's negligent interpretation of the test results that led her to conclude that the surgery was necessary, a decision the plaintiff alleged was negligent. *Jackson*, 363 Ill. App. 3d at 277, 842 N.E.2d at 768. The defendants contend that this fact makes *Jackson* analogous to our case. We find that precisely the opposite is true, however.

As previously noted, we must consider the nature of the plaintiffs' claim. Here, the complaint alleges that the plaintiff suffered permanent injuries as a result of the loss of oxygen to her brain and other organs. The complaint alleges that this occurred due to hemorrhaging that began when the defendant performed a hysterectomy and did not end until surgeons in St. Clair County were able to stop the bleeding. Obviously, the type of injury they allege is cumulative. It may be impossible, even once the evidence is fully developed at a trial, to determine precisely how much of the injury occurred in Clinton County and how much occurred in St. Clair County. The complaint also alleges that the plaintiff suffered permanent harm as a result of infection, but it does not specify when–or where–the infection began.

In addition, the plaintiffs alleged in a responsive pleading that the plaintiff suffered injury as a result of the surgery she underwent to find and treat the bleeding. (We presume that this was a result of complications, because they do not allege that the St. Clair County surgeons were negligent.) Any injuries that occurred in St. Clair County as a result of intervening acts of third parties may also be attributable to the defendant's negligence as a

9

normal incident to the risk she created. *Easley v. Apollo Detective Agency, Inc.*, 69 Ill. App. 3d 920, 938, 387 N.E.2d 1241, 1253 (1979); Restatement (Second) of Torts §443 (1965); see *Daly v. Carmean*, 210 Ill. App. 3d 19, 30-32, 568 N.E.2d 955, 962-63 (1991) (finding that a tendered jury instruction accurately stated the law which would have explained that a doctor found to be negligent is liable " 'for any damages sustained by the plaintiff arising from the efforts of subsequent health care providers to treat the condition caused by' " the defendant's negligence); see also *Simmons v. Lollar*, 304 F.2d 774, 778 (10th Cir. 1962) (applying this basic tort principle where the plaintiff's decedent died due to complications from a nonnegligent surgery to treat injuries incurred due to the defendant's negligence); W. Prosser, Torts §44, at 278-79 (4th ed. 1971). Thus, the plaintiffs allege injuries occurring in *both* Clinton County and St. Clair County. Proving that the plaintiff sustained all the alleged injuries will be crucial to their case, which makes the allegations of injury in St. Clair County an integral part of their cause of action.

It is for this reason that we find the defendants' arguments distinguishing both *Bradbury* and *Tipton* misplaced. *Bradbury*, as previously noted, involved a wrongful death claim. The decedent was a baby who was born prematurely in Kankakee County. The baby was transferred to a Cook County hospital, where he died three days later. His mother brought a wrongful death action in Cook County, alleging that negligent medical treatment in Kankakee County had led to the baby's death. *Bradbury*, 273 Ill. App. 3d at 557, 652 N.E.2d at 1229. There, as here, the defendants argued that for purposes of transactional venue, the entire transaction had taken place in Kankakee County. *Bradbury*, 273 Ill. App. 3d at 558, 652 N.E.2d at 1230. One of the defendants "even [went] so far as to contend that death is not an element of a cause of action for wrongful death." *Bradbury*, 273 Ill. App. 3d at 558, 652 N.E.2d at 1230.

In rejecting this claim, the *Bradbury* court focused much of its discussion on the

10

distinct nature of a wrongful death claim. The court explained that not only is the decedent's death a necessary element, it is "the last element necessary to render an actor liable" for wrongful death. *Bradbury*, 273 Ill. App. 3d at 558, 652 N.E.2d at 1230. The court thus concluded that venue was proper in the county where the decedent died. *Bradbury*, 273 Ill. App. 3d at 558, 652 N.E.2d at 1230. We note that the *Bradbury* court was dealing with an injury which, by definition, can occur in only one place; a decedent can only die in one county. The court, thus, did not consider whether a different result would have been required in a medical malpractice case had the baby survived.

Similarly, *Tipton* involved an injury that occurred in only one county. There, the plaintiff suffered permanent brain damage and partial paralysis as a result of a stroke. *Tipton*, 273 Ill. App. 3d at 228, 651 N.E.2d at 636. He alleged that the stroke had been triggered by a medication that elevated his blood pressure. *Tipton*, 273 Ill. App. 3d at 228, 651 N.E.2d at 637. The medication had been prescribed and dispensed in Du Page County, but the plaintiff ingested it and suffered the stroke in Cook County. *Tipton*, 273 Ill. App. 3d at 227-28, 651 N.E.2d at 636. The court found that Cook County was "clearly a 'county in which the transaction or some part thereof occurred out of which the cause of action arose.' " *Tipton*, 273 Ill. App. 3d at 228, 651 N.E.2d at 637 (quoting 735 ILCS 5/2-101 (West 1992)).

In reaching this conclusion, the court noted that the plaintiff did not have a cause of action until he suffered the stroke. *Tipton*, 273 Ill. App. 3d at 228, 651 N.E.2d at 637. The defendants here focus on this language in arguing that *Tipton* does not support the plaintiffs' position. Here, they contend, the plaintiffs *did* have a cause of action before the plaintiff was transferred to St. Clair County and treated there. Unlike the plaintiff in *Tipton*, they argue, the plaintiffs here allege that she suffered an actionable injury prior to leaving Clinton County. We find this argument unavailing. Although the plaintiffs here *could* state a cause of action for medical malpractice based solely on the allegations of injury in Clinton County,

11

it is not the *same* cause of action they state for the cumulative injuries they allege the plaintiff sustained in both counties. Where, as here, a plaintiff alleges that injuries have been incurred in multiple counties, venue may be proper in any or all of them. See *Peterson v. Monsanto Co.*, 157 Ill. App. 3d 508, 513-14, 510 N.E.2d 458, 462 (1987).

In addition, we note that the *Tipton* court emphasized that transactional venue is meant to be a broad, flexible doctrine. *Tipton*, 273 Ill. App. 3d at 228, 651 N.E.2d 637. The defendants' unnecessarily narrow interpretation of both *Tipton* and *Bradbury* is at odds with this principle.

A second important distinction between this case and *Jackson* is the fact that the plaintiff here alleges that she received postoperative care in St. Clair County for the hysterectomy performed by the defendant *prior to being released from the hospital*. Although not precisely analogous, we find our previous holding in *Wier v. Ketterer*, 133 Ill. App. 3d 751, 479 N.E.2d 416 (1985), instructive. There, the plaintiff traveled through St. Clair County while being transported by ambulance from Clinton County to St. Louis, Missouri. He alleged that he suffered hypoglycemia and hypoxia in part due to the failure of the defendant doctor to provide adequate medical supervision to the ambulance technicians as they transported the plaintiff through St. Clair County. *Wier*, 133 Ill. App. 3d at 752, 479 N.E.2d at 416-17. We note that implicit in this brief recitation of facts is the fact that the defendant doctor was not with the plaintiff in the ambulance as it traveled through St. Clair County. We also note that it is not entirely clear from the opinion whether the hypoglycemia and hypoxia began as the ambulance passed through St. Clair County or continued throughout the course of the journey. This court found these allegations sufficient to establish venue in St. Clair County. *Wier*, 133 Ill. App. 3d at 752, 479 N.E.2d at 417.

There, as here, the plaintiff did not allege that the defendant committed any negligent acts or omissions while *the defendant* was in St. Clair County. Rather, as here, the plaintiff

12

alleged that he sustained an injury as a result of the defendant's negligence while *the plaintiff* was in St. Clair County. In addition, although not discussed in the *Wier* decision, the plaintiff there could not have a claim against the doctor unless the doctor had a duty to provide medical supervision to the ambulance crew. Presumably, this duty arose either because the plaintiff was being transferred from a Clinton County hospital to a different hospital, much as the plaintiff was here, or because the defendant determined that his admission to the St. Louis hospital was necessary. Here, the defendant had a duty to provide appropriate postoperative care to the plaintiff until she was well enough to be released from the hospital. Thus, her alleged failure to do so constituted ongoing negligence until the plaintiff was ultimately released from the hospital. Thus, the postoperative care the plaintiff received in St. Clair County simply cannot be considered anything other than an integral part of the surgery the defendant performed in Clinton County.

As a third distinction between this case and *Jackson*, we note the policy considerations that supported the Fourth District's decision there. The *Jackson* court explained that the legislative intent behind our venue statute was to protect a defendant from having to defend a lawsuit in a county with "little or no relation to the defendant or the transaction that is the subject of the lawsuit." *Jackson*, 363 Ill. App. 3d at 278, 842 N.E.2d at 769. The court expressed a concern that finding venue in McLean County on the facts before it could lead to absurd results. The court explained as follows:

> "For example, the legislature could not have intended for a urology surgeon to be sued in a county when the surgeon's *only* connection to that county is that the patient was referred to him by a urologist in that county. Nor could the legislature have intended for a cancer specialist to be sued in a county when the specialist's *only* connection to that county is that he reviewed a patient's records that were brought from there." (Emphases in original.) *Jackson*, 363 Ill. App. 3d at 278, 842 N.E.2d at 769.

Here, the connection between the plaintiffs' case and St. Clair County is much stronger than the connection that existed between the plaintiff's case in *Jackson* and McLean County. Thus, the policy concerns that informed the *Jackson* court's decision are not present here. We conclude that venue is proper in St. Clair County.

Finally, the defendants argue that their right to proper venue should not be defeated by the plaintiffs' attempt at forum-shopping. As long as venue is proper in more than one county, a plaintiff is generally entitled to the forum of her choice. *Hall v. Keating*, 246 Ill. App. 3d 538, 541, 616 N.E.2d 683, 685 (1993) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 91 L. Ed. 1055, 67 S. Ct. 839 (1947)); see also *Tipton*, 273 Ill. App. 3d at 229, 651 N.E.2d at 637. We have already concluded that venue was proper in St. Clair County.

There are some exceptions to this principle. For example, venue cannot be based upon the residence of a defendant who was joined in bad faith solely to establish venue. See 735 ILCS 5/2-101 (West 2006); see also *Hall*, 246 Ill. App. 3d at 540, 616 N.E.2d at 685. Here, the residence prong of the venue statute is not at issue. The defendants do not attempt to argue that the plaintiffs added a St. Clair County-based cause of action or defendant in bad faith solely to establish venue there. Indeed, they acknowledge that the plaintiff received postoperative care there, and they do not contest her allegation that she continued to hemorrhage after leaving Clinton County. They argue instead that the events alleged to have occurred in St. Clair County were so tangential to the cause of action that "brazen forum[-]shopping" is the only possible motive for the "transparent" choice of forum. However, we have already reached the opposite conclusion. The other exception to the rule that a plaintiff is entitled to the venue of her choice as long as venue is proper is the doctrine of *forum non conveniens*. Although raised at the trial court, that doctrine is not before us.

Moreover, we note that the facts of this case simply do not support the defendants' forum-shopping argument. The plaintiff was transferred to St. Elizabeth's Hospital by an

14

attending cardiologist before the plaintiff was released from the hospital. She did not make the decision, and she therefore did not–and could not–control the location of the postoperative care she received. In other words, it was not even possible for her to choose a physician in a county that might be a favorable forum for her malpractice action.

In addition, as previously discussed, this is not a case where St. Clair County bears no substantial connection to the litigation. Much of the evidence regarding the cause and extent of the plaintiff's injuries will come from St. Clair County because that is where she was diagnosed and treated. Thus, we are not convinced that this case presents so blatant an attempt at forum-shopping that we must depart from the rule that a plaintiff is entitled to choose any forum where venue is proper. We conclude that the court properly denied the motion to transfer.

For the reasons stated, we affirm the order of the trial court denying the defendants' motion to transfer.


Affirmed.


WELCH and WEXSTTEN, JJ., concur.

NO. 5-08-0247

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | |
|---|---|
| MARGIE KAISER and LAMAR KAISER, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiffs-Appellees, | ) St. Clair County. |
| | ) |
| v. | ) No. 07-L-564 |
| | ) |
| DR. A. DOLL-POLLARD and SOUTHERN | ) |
| OBSTETRICS AND GYNECOLOGICAL | ) |
| ASSOCIATES, S.C., | ) Honorable |
| | ) Lloyd A. Cueto, |
| Defendants-Appellants. | ) Judge, presiding. |

**Opinion Filed**:     February 11, 2010

**Justices**:     Honorable Melissa A. Chapman, J.

Honorable Thomas M. Welch, J., and
Honorable James M. Wexstten, J.,
Concur

**Attorneys for Appellants**     Dawn A. Sallerson, Nancy L. Cardinale, Timothy G. Shelton, Hinshaw & Culbertson, LLP, 222 N. LaSalle, Suite 300, Chicago, IL 60601

**Attorney for Appellees**     John Womick, Womick Law Firm, Chtd., 501 Rushing Drive, Herrin, IL 62949