2023 IL App (1st) 211104-U
No. 1-21-1104

FIRST DIVISION
February 6, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| JULIE MAGNINI and MARTIN MAGNINI, | ) | Appeal from the Circuit Court of |
| | ) | Cook County, Law Division |
| Plaintiffs-Appellees, | ) | |
| | ) | No. 2018 L 4705 |
| v. | ) | |
| | ) | The Honorable |
| AMIR HEYDARI, M.D., *et al.*, | ) | Melissa Durkin, |
| | ) | Judge Presiding. |
| Defendant-Appellant. | ) | |

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Lavin and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We reverse and remand the circuit court's order granting Plaintiffs-Appellees' motion to reconsider...

¶ 2    Plaintiffs Julie and Martin Magnini filed a medical malpractice suit in Cook County against doctor defendants Amir Heydari, Aaron Schwaab, and John Alverdy, and corporate defendants Richard E. Lind, d/b/a Surgical Associates of Fox Valley, S.C., BMI Weight Busters Weight Loss Center, Inc., and University of Chicago Hospitals, stemming from a gastric bypass surgery that Dr. Heydari performed on Julie Magnini in McHenry County, and the subsequent medical

treatment Magnini received relating to that procedure. After Plaintiffs voluntarily dismissed the two Cook County defendants, Dr. John Alverdy and University of Chicago Hospitals, Dr. Amir Heydari moved to transfer venue from Cook County to McHenry County. Heydari argued that the plaintiffs and all remaining defendants were located in McHenry County, and all of the transactions that gave rise to the plaintiffs' claims occurred in McHenry County.

¶ 3     The circuit court granted the motion to transfer venue. Plaintiffs filed a motion to reconsider, arguing that the circuit court erred in making both factual and legal determinations in its order. The circuit court granted the motion to reconsider, and reversed its prior ruling on the motion to transfer venue. Defendant Heydari subsequently filed this appeal.

¶ 4                                        BACKGROUND

¶ 5     Plaintiffs Julie and Martin Magnini are residents of McHenry County. On October 30, 2007, Julie Magnini underwent gastric bypass surgery at Centegra Memorial Medical Center ("Centegra") in McHenry County. Dr. Amir Heydari performed the procedure, and was assisted by Dr. Aaron Schwaab; both were residents of McHenry County. Heydari provided Magnini post-operative care, also in McHenry County. Plaintiffs' complaint alleges that Heydari and Schwaab were employees or agents of corporate defendant Surgical Associates of Fox Valley, S.C. ("SAFV"), whose offices are in McHenry County. The complaint further states that Heydari was an agent of BMI Weight Busters Weight Loss Center, Inc. ("BMI"), also based in McHenry County.

¶ 6     According to Plaintiffs, Magnini began experiencing pain, vomiting, and difficulty eating soon after the surgery. She returned to Heydari for further treatment, and was hospitalized at Centegra for some time in February 2008. Heydari diagnosed a narrowing of the bypass tube that

was causing a blockage near her stomach pouch, as well as an internal hernia and incarcerated[1] bowel. On June 27, 2008, Heydari performed surgery on Magnini to attempt to treat these issues and relieve her pain. Despite this, Magnini continued to experience abdominal pain and vomiting. Heydari again performed surgery on Magnini on August 24, 2008 in a further attempt to correct the original bypass procedure. According to Plaintiffs' complaint, Magnini first became aware of Heydari's alleged wrongful conduct in performing the bypass surgery and in his subsequent treatment of her after the August 2008 surgery. In September 2008, Magnini was hospitalized at Centegra for dehydration, which Plaintiffs also attribute to the bypass surgery. She continued to be treated by Dr. Heydari during this time.

¶ 7    In November 2008, Magnini sought care from Dr. John Alverdy at University of Chicago Hospitals, in Cook County, for treatment of her complications from the bypass surgery. On November 3, 2008, Alverdy performed surgery on Magnini to reverse the bypass. On January 2, 2009, Alvery performed a second surgery, to remove Magnini's gall bladder. Plaintiffs' original complaint alleged that Alverdy breached his duty of care in numerous ways during both procedures, including failing to diagnose and correct any of Magnini's complications allegedly caused by Heydari, and performing an unnecessary gall bladder removal.

¶ 8    Heydari performed one additional surgery on Magnini at Centegra on April 28, 2009, also connected to treating complications from the original bypass. On January 13, 2010, Magnini sought care from Drs. Richard Lind and Eugene Lee, both McHenry County residents, at Centegra. They also operated on Magnini as treatment of her post-bypass complications.

---

[1] In medical usage, "incarcerated" is defined as "of a hernia: constricted but not strangulated." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/incarcerated. Accessed 24 Jan. 2023.

¶ 9    On August 16, 2010, the Magninis filed their original suit against Drs. Heydari, Schwaab, Lind, Lee, and Alvery, as well as Centegra, SAFV, BMI, and University of Chicago Hospitals. Plaintiffs alleged that Heydari negligently provided medical care to Julie Magnini each time that he treated her, beginning with the gastric bypass surgery in October 2007, and that Schwaab was also negligent in assisting Heydari. They further alleged that Drs. Lind and Lee did not properly correct the botched bypass procedure and also provided negligent treatment. Lastly, Plaintiffs claimed that Alverdy negligently reversed the bypass, failed to identify and correct any of Heydari's other alleged improper procedures, and unnecessarily removed Magnini's gall bladder. The circuit court entered summary judgment in favor of Centegra, finding that none of the individual defendants were its employees or agents. Plaintiffs refiled the case in 2015, voluntarily dismissed it in 2017, and refiled it again on May 7, 2018, naming the same defendants minus Centegra.

¶ 10   On October 20, 2020, Plaintiffs voluntarily dismissed Alverdy and University of Chicago Hospitals with prejudice. These were the only Cook County defendants, and the claims against them were the only ones involving any actions that occurred in Cook County. On November 17, 2020, Heydari, joined by Dr. Lind d/b/a SAFV, filed a motion to transfer venue to McHenry County, arguing that all of the remaining defendants and relevant transactions occurred there.

¶ 11   On January 25, 2021, the circuit court granted summary judgment in favor of Schwaab. The court also found no record of BMI having been served or having filed an appearance in the case. The remaining defendants were at that point Dr. Heydari, Dr. Lind d/b/a SAFV, and Dr. Lee. The circuit court granted the motion to transfer venue on May 4, 2021. In its order, the court found that while Heydari owned residential property in Colorado and split his professional time between Colorado and McHenry County, Illinois, the record showed that his residence for the purpose of

determining venue was in McHenry County. It further found that Dr. Lind and SAFV were located in McHenry County, and all relevant transactions leading to Plaintiffs' cause of action occurred in McHenry County, particularly at Centegra, where Heydari performed the gastric bypass and the later surgeries attempting to correct the original procedure, and at SAFV, where Julie Magnini consulted with Heydari.

¶ 12    The court wrote that Heydari presented competent and unrefuted evidence in the form of two affidavits in which he testified that despite splitting his professional time between Illinois and Colorado, he resided in Crystal Lake, McHenry County, Illinois and had maintained his McHenry County residence throughout the time of the relevant events giving rise to Plaintiffs' claims, including the date on which he was served with the lawsuit. Among the evidence Heydari swore to that established his residence and place of business as being in McHenry County, he wrote that: in 2010, when the original case was filed, he filed taxes in Illinois; his daughter attended school in McHenry County in 2010; he did not live at the Colorado property he owned; and that property had been used by his mother-in-law and later rented out.[2]

¶ 13    In its analysis of the transactional prong of the venue analysis, however, the circuit court wrote that venue had only been proper in Cook County because of the residence of Defendants Alverdy and the University of Chicago Hospitals and because of Alverdy's treatment of Julie Magnini in Cook County. However, after those defendants were dismissed from the case, Alverdy's reversal of the gastric bypass had no connection to any of the dealings between Magnini and Heydari. The circuit court concluded that with only the two McHenry County defendants remaining in the case, all of the allegedly negligent conduct occurred in McHenry County,

---

[2] The circuit court also found that the evidence conclusively showed that Dr. Lind, d/b/a SAFV, also resided in McHenry County. This defendant is not a party to the appeal, and Plaintiffs do not challenge anything the court decided regarding to this party. We will therefore continue our discussion focusing on Defendant Heydari.

involving only residents of McHenry County. Therefore, it held that transfer of venue to McHenry County was proper, and granted Defendants' motion.

¶ 14    Plaintiffs filed a motion to reconsider. The circuit court granted the motion on August 19, 2021, in an order issued without a memorandum opinion. It reversed its prior decision granting the motion to transfer venue, and retained the case in Cook County, writing that it was now denying Defendants' motion to transfer for reasons stated at the August 17, 2021 hearing on the motion to reconsider.

¶ 15    There was no court reporter present at the August 17 hearing. While the parties to this appeal prepared a bystander's report, the court rejected the report and instead issued its own report of proceedings on this hearing. According to the report, the court stated that the reason it was granting the motion was due to the court's prior misapplication of law on the transactional prong of the venue analysis. At the hearing, the court cited to *Kaiser v. Doll-Pollard*, 398 Ill. App. 3d 652 (5th Dist. 2010), and found that Alverdy's surgery reversing the gastric bypass, which occurred in Cook County, was part of Julie Magnini's "continuing and cumulative injury as a result of Dr. Heydari's negligence." Therefore, because the court found that some part of the underlying transactions occurred in Cook County, venue was proper there even without the Cook County defendants being parties to the case.

¶ 16    Defendant Heydari now appeals from that order.[3]

¶ 17                                    ANALYSIS

¶ 18                                Standard of Review

¶ 19    Proper venue is an important privilege belonging to the defendant; it is therefore given great weight by our courts. *See Tabirta v. Cummings*, 2020 IL 124798, ¶ 16 (citing *Corral v.*

---

[3] As no facts involving Plaintiff Martin Magnini are mentioned in the parties' arguments on appeal, going forward, we refer to Plaintiff Julie Magnini as "Magnini."

*Mervis Industries, Inc*., 217 Ill.2d 144, 154 (2005)). Every action must be commenced "(1) in the county of residence of any defendant who is joined in good faith and with probable cause *** , or (2) in the county in which the transaction or some part thereof occurred out of which the cause of action arose." 735 ILCS 5/2-101. The purpose of the Illinois venue statute is to ensure that an action is brought in a location that is either convenient to the defendant, by providing venue in his county of residence, or to potential witnesses, by providing venue where the cause of action arose. *Tabirta*, 2020 IL at ¶ 16. The defendant bears the burden of showing that plaintiff's selection of venue is improper. *Id.* at ¶ 17. On a motion to transfer venue, the trial court should construe the venue statute liberally, in favor of the movant. *Id.*

¶ 20　　The trial court's decision on a motion to transfer venue involves two separate determinations—a question of fact and a question of law. *Corral*, 217 Ill.2d at 153 (citing *Lake County Riverboat L.P. ex rel. FRGP, L.P. v. Illinois Gaming Board*, 313 Ill.App.3d 943, 951 (2d Dist. 2000)). The trial court's findings of fact will not be disturbed unless they are against the manifest weight of the evidence; conclusions of law are reviewed *de novo*. *Id.* at 153-54. Regarding the former, a decision is against the manifest weight of the evidence "only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." *Id.* at 155 (quoting *Eychaner v. Gross*, 202 Ill.2d 228, 252 (2002)).

¶ 21　　The purpose of a motion to reconsider is to bring to the court's attention a change in the law, an error in the court's previous application of existing law, or newly discovered evidence that was not available at the time of the hearing. *People v. $280,020 U.S. Currency*, 372 Ill.App.3d 785, 791 (1st Dist. 2007) (citing *In re Gustavo H*., 362 Ill.App.3d 802, 814 (1st Dist. 2005)). When a motion to reconsider is premised solely on the court's alleged misapplication of the law, the standard of review is *de novo*. *Id.* However, when the motion is based on new matters, such as

additional facts or new arguments or legal theories that were not presented during the proceedings leading to the appealed-from order, we employ an abuse of discretion standard. *Muhammad v. Muhammad-Rahmah*, 363 Ill.App.3d 407, 415 (1st Dist. 2006).

¶ 22     In granting the motion to reconsider, the circuit court did not alter any of its prior findings regarding the residence of any of the parties. Rather, the report of proceedings and the court's August 19, 2021 order are clear that the reason the court found for keeping the case in Cook County was under the transactional prong, because the court reversed its prior determination that the treatment Magnini received from Alverdy, including reversal of the gastric bypass, were a part of the transactions from which Plaintiffs' claims arose. However, Magnini argues on appeal, in responding to Heydari, that venue in Cook County was also proper because Heydari is a resident of Colorado, not McHenry County. Magnini does not present any new evidence on this point, repeating instead the argument that she presented to the circuit court on Heydari's original motion to transfer, namely that Plaintiff's investigator found three residential homes in Colorado owned by Heydari, including one that was allegedly Heydari's residence during the relevant time. The investigator also allegedly found that Heydari practiced medicine in Colorado and had no Illinois residence, although he did own an office building in McHenry County. Plaintiff also claims that the investigation revealed that SAFV, where Heydari treated Magnini, was not listed as an Illinois corporation or LLC in good standing. The circuit court found that Heydari did reside in McHenry County, acknowledging that the record showed that he owned property in Colorado, but actually lived in McHenry County for the purposes of establishing venue.

¶ 23     We see no reason to disturb the circuit court's fact findings. Heydari produced several pieces of evidence documenting his residence in McHenry County during the relevant time, and Plaintiff's evidence does not negate this portion of the record, regardless of how many properties

Heydari may have owned in Colorado. We do not find the circuit court's findings regarding the residential prong to be against the manifest weight of the evidence. Plaintiff raises no other challenge to the circuit court's findings regarding the residential prong. We turn next to the transactional prong, on which the circuit court reversed itself in granting the motion to reconsider.

¶ 24    As an initial note, Plaintiff does not challenge the circuit court's findings that all of the relevant conduct giving rise to Plaintiff's cause of action that was performed by the remaining defendants occurred in McHenry County—specifically at Centegra and SAFV. The disputed issue in this matter is whether the actions of Alverdy—the only conduct which occurred in Cook County—were part of Plaintiff's transactions with Heydari and SAFV. If Alverdy's treatment reversing the gastric bypass procedure could not be considered part of Magnini's continuous and cumulative injury stemming from Heydari's alleged negligence, then his dismissal from the case would make McHenry County the proper venue. The circuit court originally found that Alverdy's reversal of Heydari's original bypass procedure was not part of the direct dealings between Magnini and Heydari and his employer, and once Alverdy and University of Chicago Hospitals were no longer parties to the case, there was no remaining basis for keeping the case in Cook County.

¶ 25    In reversing that decision, the circuit court relied on *Kaiser v. Doll-Pollard*, 398 Ill. App. 3d 652 (5th Dist. 2010), although the record of proceedings does not expand on the court's analysis and application of that case. *Kaiser* was also a medical malpractice case, where the plaintiff underwent a hysterectomy in Clinton County, Illinois and was transferred to a hospital in St. Clair County to treat bleeding that she experienced after the original procedure. She underwent surgery in St. Clair County, which stopped the bleeding, but alleged that she suffered permanent injury as a result of the hysterectomy. *Kaiser*, 398 Ill. App. 3d at 653. The plaintiff filed suit against the

doctor who performed the hysterectomy and her employer in St. Clair County, claiming that venue was proper because the diagnosis and treatment of her unstoppable bleeding had occurred there. *Id*. at 654. The defendant moved to transfer, arguing that the plaintiff did not allege that any negligence occurred in St. Clair County, and all transactions leading to her cause of action occurred in Clinton County. *Id.* at 643. The circuit court denied the motion, and the Fifth District agreed. *Id*. The sole issue on appeal revolved around the transaction prong of the venue analysis, and required determining whether the alleged facts that took place in St. Clair County formed a "part" of the transaction. *Id.* at 656. The court first established that this was a legal question of whether the trial court correctly determined the legal effect of the facts as pled, and thus review was *de novo*. *Id.*

¶ 26    The court laid out the two factors that require consideration under the transactional prong— the nature of the case, and the place where the cause of action sprang into being. *Id.* (citing *Rensing v. Merck & Co*., 367 Ill.App.3d 1046, 1050 (5th Dist. 2006)). In *Kaiser*, the court found it significant that the plaintiff alleged that she suffered cumulative injuries, beginning with the hysterectomy in Clinton County, and continuing with the subsequent hemorrhaging which did not end until she was treated in St. Clair County, at which point the actions causing her injuries stopped. *Id*. at 659. According to the court's reasoning, "It may be impossible, even once the evidence is fully developed at a trial, to determine precisely how much of the injury occurred in Clinton County and how much occurred in St. Clair County." *Id.* The court noted that the plaintiff also claimed that one of the causes of her permanent injuries was an infection, but the complaint did not specify where the infection began. *Id*. While the plaintiff did not allege that any negligence took place while the defendant was in St. Clair County, she did claim that she sustained an injury as a result of the defendant's negligence while *she* was in St. Clair County. *Id.* at 663. Furthermore,

the court found it significant that the plaintiff was still under the defendant's care when she was transferred to the hospital in St. Clair County, and the defendant had a continuing duty to provide nonnegligent postoperative care to her until she was released from the hospital. Thus, the court concluded, "the postoperative care the plaintiff received in St. Clair County simply cannot be considered anything other than an integral part of the surgery the defendant performed in Clinton County." *Id.*

¶ 27    In the present matter, as in *Kaiser*, venue turns on the transactional prong, and we review *de novo* whether the circuit court correctly applied the law to the facts as pled in Plaintiff's complaint. According to the venue statute, venue is proper in "the county in which the transaction or some part thereof occurred out of which the cause of action arose." 735 ILCS 5/2-101. Our courts have interpreted the phrase "transaction or some part thereof" broadly and flexibly. *Tipton by Stevens v. Estate of Cusik*, 273 Ill.App.3d 226, 228 (1st Dist. 1995). It includes all the facts that the plaintiff bears the burden of proving. *Kaiser¸* 398 Ill. App. 3d at 656 (citing *Servicemaster Co. v. Mary Thompson Hospital*, 177 Ill.App.3d 885, 890–91 (1988)). In this case, where Plaintiff brings a medical malpractice action, she must prove: (1) the standard of care that the defendant's conduct is to be measured against; (2) that the defendant failed to comply with that standard of care; and (3) that the defendant's negligent care proximately caused the plaintiff's injury. *Wiedenbeck v. Searle*, 385 Ill.App.3d 289, 292 (1st Dist. 2008). We take all well-pled facts in Plaintiff's complaint as true. *Kaiser¸* 398 Ill. App. 3d at 656.

¶ 28    As the Fourth District explained in *Jackson ex rel. Jackson v. Reid,* the term "transaction" is not meant to be interpreted so narrowly "as to include only those immediate facts from which the cause of action arose." 363 Ill.App.3d 271, 276 (4th Dist. 2006). That decision also explains that third-party interactions can constitute a part of the transaction if they "have a definite and

direct bearing on the cause of action." *Id. Jackson* was also a medical malpractice case, and Heydari relies on this case in arguing that venue in Cook County is improper. The defendant in *Kaiser* also relied on this case, and the *Kaiser* decision addresses it and distinguishes the facts. In *Jackson*, all of the allegedly negligent medical treatment occurred in Peoria County; however, the defendant had ordered tests to be performed on the plaintiff at a location in McLean County. *Jackson*, 363 Ill.App.3d at 274. The court reversed the trial court's denial of the defendant's motion to transfer venue to Peoria County, reviewing the transactional prong of the venue analysis and determining that the plaintiff's cause of action sprang solely from medical care provided in Peoria County, the tests ordered by the defendant that occurred in McLean County were not an integral part of the cause of action, the tests were not alleged to have been performed negligently, and the defendant's interpretation of those tests, which the plaintiff *did* claim was negligent, took place in Peoria County. *Id*. at 277. The court also considered the legislative intent behind the venue statute, and determined that it would be contrary to the purpose of preventing a defendant from defending an action in a county with little or no relation to the defendant or the transactions that made up the subject of the suit. *Id.* at 278.

¶ 29     According to the *Kaiser* court, each of these points were distinguishable between the two cases. In *Kaiser*, the continuous, cumulative injury of the plaintiff's hemorrhaging occurred between the two counties at issue, the plaintiff had not been released from the hospital in Clinton County when she was transferred for postoperative care to St. Clair County, and the same policy considerations that supported transfer in *Jackson* went against transfer in *Kaiser*. *Kaiser*, 398 Ill. App. 3d at 659-62. In the present matter, Heydari argues that, unlike the plaintiff in *Kaiser*, Magnini had been discharged from Centegra and independently chose to travel to Cook County to seek out care from Alverdy and University of Chicago Hospital. Heydari did not send her to

Alverdy while she was under Heydari's care and while she was unable to decide for herself. Magnini, however, argues that the key comparison is the continuous, cumulative nature of her injury; she contends that she continued to suffer from her symptoms caused by Heydari's gastric bypass while she was receiving care from Alverdy.

¶ 30    In *Kaiser*, the court stated that the continuing injury was one caused by the defendant in Clinton County, but sustained by the plaintiff in both counties in question. The treatment in St. Clair County was an integral part of the transactions from which the plaintiff's claims sprung because she was still under the defendant's care—she had not been discharged from the hospital in Clinton County—when the defendant sent her to St. Clair County.

¶ 31    Here, while the facts may be similar to the extent that Magnini also underwent a procedure to reverse her continued injuries in a different county than the one where the original negligence occurred, that is where the similarities end. Even though Magnini continued to return to Heydari for treatment before and after Alverdy reversed the bypass, the only alleged negligence that Magnini identifies in her pleadings that occurred in Cook County was solely committed by Alverdy. There were no claims that she was injured by Heydari's negligence that he committed in McHenry County when she was in Cook County. The mere fact that she continued to experience the symptoms allegedly caused by Heydari's actions when she travelled to Cook County does not create a basis for that county to be proper venue for her suit. This clearly was not the intention of the legislature in enacting the venue statute.

¶ 32    Without Alverdy's presence as a defendant, Magnini cannot maintain that any negligence occurred in Cook County. Even though the doctors in St. Clair County in *Kaiser* were not defendants in that case, the plaintiff was able to plead that the defendant was negligent in sending her to them as part of the postoperative care she received from the defendant, even though the

defendant herself never interacted with the plaintiff in St. Clair County. In *Kaiser*, there was also the question of whether the plaintiff's infection occurred in Clinton or St. Clair County. If no negligence occurred in Cook County—the necessary finding due to Alverdy and his employer being removed from the case—there is no integral part of the transactions forming the basis of Magnini's claims that took place in Cook County. She did not end up in Cook County because of Heydari's negligence—she ended up in Cook County through her own decision to seek treatment to correct Heydari's alleged negligence. That treatment, again, must be considered to have been performed nonnegligently, by third parties, similar to the tests performed in McLean County in *Jackson*. Even there, the tests were ordered by the defendant; here, Heydari did not even send Magnini anywhere for other treatments or procedures. He had no hand in anything that occurred in Cook County.

¶ 33    Magnini attempts to draw comparison to *Kaiser* by claiming a continuous, cumulative injury that continued in Cook County. The circuit court agreed, stating that, taking Magnini's pleadings of a cumulative injury as true, the transactions in Cook County were an integral part of the transactions. However, as we have discussed, that cannot be the case if the Cook County defendants are not parties to the case. The plaintiff in *Jackson* presumably continued experiencing whatever symptoms she claimed as her injury when she traveled to McLean County for the tests that the defendant ordered. That did not mean that venue was proper there.

¶ 34    This case is also distinguishable from another case that Magnini relies on, *Tipton*. In that case, the plaintiff was prescribed and dispensed prescription drugs in DuPage County, but he ingested the drugs and suffered a stroke allegedly caused by the drugs in Cook County. *Tipton*, 273 Ill.App.3d at 228. The court held that venue in Cook County was proper because the ingestion of the drug was an integral part of the transaction, the plaintiff did not have a cause of action until

he suffered a stroke in Cook County, and the defendants knew that the plaintiff resided in Cook County, therefore making it foreseeable to them that he would ingest the drug there. *Id*. at 228-29. The facts in the present case are distinguishable. Heydari had no idea or expectation that Magnini would travel to Cook County for medical treatment. Her cause of action arose in McHenry County; not only was the gastric bypass performed there, but she also began experiencing the symptoms for which she returned to Heydari in McHenry County approximately five times after the original procedure. Although she claims that she did not know and had no reason to know that a cause of action existed until Alverdy removed the gastric bypass band in Cook County, allegedly because Heydari continuously misrepresented and lied about her postoperative complaints, this is not the proper consideration under the transaction prong. Rather, "transaction" refers to "something which took place whereby a cause of action arose and by which legal relationships were altered." *Id.* at 228. The legal relationship between Magnini and the remaining defendants was altered when Heydari allegedly negligently performed the bypass surgery. Magnini was aware that she was experiencing pain, vomiting, and difficulty eating after Heydari performed the bypass. The facts do not support her pleading that she should not have known of a possible cause of action until Alverdy reversed the procedure.[4]

---

[4] We additionally note the factual similarities between the present case and an unpublished decision, *Havrilla v. Ramirez*, 2014 IL App (1st) 131737-U. While we do not rely on this decision as precedent, it includes an instructive discussion of the transactional prong and cases relied upon by the parties here. In *Havrilla*, the plaintiff claimed that he received negligent treatment by the defendants in Will County, when they failed to diagnose his tongue cancer. *Id*. at ¶¶ 5-6. He received medical treatment for tongue cancer in Cook County; none of the Cook County individuals or institutions were named as defendants in the case, and the complaint did not allege that any negligence occurred in Cook County. *Id.* None of the parties were residents of Cook County. The plaintiff had already been diagnosed with tongue cancer and knew the extent to which it had metastasized by the time he sought care in Cook County. *Id.* at ¶13. The matter turned solely on the transactional prong of the venue analysis, on the question of whether the plaintiff's cancer treatment was an integral part of the acts giving rise to his cause of action. *Id*. at ¶ 11. ¶ 1 We compared the matter to *Kaiser*, stating that the plaintiff in the latter case alleged a cumulative injury that continued when she was transferred to St. Clair County, and she further alleged that injuries she sustained during surgery in St. Clair County were attributable to the defendants' initial negligence in Clinton County. *Id.* at ¶ 20; *Kaiser*, 398 Ill. App. 3d at 662. Whereas in *Havrilla*, the treatment that occurred in Cook County "was merely an attempt to correct the previously rendered negligent treatment." *Havrilla*, 2014 IL App (1st) 131737-U at ¶ 20. We find the present facts to align more closely with *Havrilla* than *Kaiser* regarding the cumulative injury argument.

¶ 35　Magnini was aware that something was wrong after the gastric bypass—she experienced symptoms for which she returned to Heydari approximately five times for postoperative treatment before she saw Alverdy. Following the court's dismissal of Alverdy and his employer, Magnini could not allege that any negligence took place in Cook County, and Magnini does not present any authority for the premise that a medical malpractice cause of action does not arise until the plaintiff's injuries have fully stabilized, whether that be through the plaintiff's recovery, or the plateauing of her permanent injuries. Just as the tests the plaintiff in *Jackson* received were not an integral part of the transactions giving rise to her cause of action, the treatment that Magnini underwent in Cook County falls outside of the scope of facts she alleges that are necessary to sufficiently plead medical malpractice. All elements of her claims against Defendants arose before she received care in Cook County, and therefore, venue there is improper.

¶ 36　　　　　　　　　　　　　　　　CONCLUSION

¶ 37　For the foregoing reasons, the judgment of the Circuit Court of Cook County is reversed and remanded. This matter should be heard in McHenry County.

¶ 38　Reversed and remanded.