NOTICE
Decision filed 05/02/23. The
text of this decision may be
changed or corrected prior to
the filing of a Peti ion for
Rehearing or the disposition of
the same.

2023 IL App (5th) 220653

NO. 5-22-0653

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| SAMANTHA DRAVES and RANDALL DRAVES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 21-L-1011 |
| | ) | |
| JAMES THOMAS, D.O.; ABIODUN SANGOSENI, | ) | |
| M.D.; NES ILLINOIS, INC., an Illinois Corporation; and | ) | |
| RANDOLPH HOSPITAL DISTRICT, d/b/a | ) | |
| Memorial Hospital, an Illinois Body Politic, | ) | Honorable |
| | ) | Heinz M. Rudolf, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court, with opinion.
Justices Welch and Cates concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal involves a motion to transfer a medical malpractice action from St. Clair County, Illinois, to Randolph County, Illinois, based on improper venue. Plaintiff, Samantha Draves, sought emergency medical services on multiple occasions at Randolph Hospital District, d/b/a Memorial Hospital, and/or NES Illinois[1] from Drs. James Thomas and Abiodun Sangoseni (defendants) in Randolph County, Illinois. Allegedly following orders from Samantha's primary care physician, plaintiff, Randall Draves, Samantha's husband, transported Samantha from

---

[1]Memorial Hospital paid NES Illinois, Inc. a contractual rate per physician hour worked at Memorial Hospital. Drs. Thomas and Sangoseni were employees of Memorial Hospital and NES Illinois, Inc.

1

Chester, Illinois, Randolph County, Illinois, through St. Clair County, Illinois, to Barnes-Jewish Hospital in St. Louis, Missouri. Plaintiffs argue that the circuit court's order granting defendants' motions to transfer venue to Randolph County was improper, where the court's factual findings were against the manifest weight of the evidence and the court improperly applied the transactional venue analysis set forth in section 2-103(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2-103(a) (West 2020)). We affirm.

¶ 2                                    I. BACKGROUND

¶ 3      We limit our recitation to those facts relevant to our disposition of this appeal. On October 21, 2021, plaintiffs filed a complaint in the circuit court of St. Clair County, alleging defendants—Drs. James Thomas and Abiodun Sangoseni and their employers, NES Illinois, Inc., and Randolph Hospital District, d/b/a Memorial Hospital (Memorial Hospital)—breached their duty of care to Samantha. Plaintiffs specifically alleged that defendants failed to timely and appropriately diagnose and treat Samantha's condition, timely refer Samantha to a specialist, and otherwise act as reasonably prudent physicians under the circumstances.

¶ 4      Plaintiffs, who were residents of Randolph County, alleged that Samantha sought emergency medical services at Memorial Hospital on several occasions from December 29, 2020, to January 4, 2021, from Drs. Thomas and Sangoseni. During this time, plaintiffs alleged that Samantha's condition deteriorated. Plaintiffs also alleged that on January 6, 2021, an unidentified physician "sent [Samantha] from Memorial Hospital to Barnes-Jewish Hospital ***, [where she] was diagnosed with a parapharyngeal abscess, and underwent multiple surgeries to her neck and chest." As a result of defendants' negligence, Samantha experienced a disability and/or loss of a normal life, disfigurement, an increased risk of future injuries, pain and suffering, and past and

2

future medical expenses.[2] The complaint did not address the question of venue. Additionally, plaintiffs did not allege that Samantha suffered a cumulative injury while in transit to Barnes-Jewish Hospital, and plaintiffs did not provide any facts that injury or negligence took place in St. Clair County.

¶ 5    On November 18, 2021, Memorial Hospital filed a motion to transfer for improper venue, pursuant to section 2-103 of the Code, arguing the cause of action—defendants' alleged negligent care and treatment of Samantha—took place in Randolph County, not St. Clair County. Memorial Hospital claimed it was a municipal corporation operated by the government of Randolph County, with its principal office located in Chester, Illinois, Randolph County, and thus, venue was determined by the municipal government statute (*id.*). Similarly, on January 12, 2022, Drs. Thomas and Sangoseni and their employer, NES Illinois, Inc., filed a combined motion to transfer for improper venue, pursuant to section 2-103(a) of the Code. *Id.*

¶ 6    On February 8, 2022, plaintiffs filed a response in opposition to defendants' motions to transfer for improper venue and attached an affidavit of Randall. Plaintiffs argued that Samantha's unidentified primary care physician instructed Randall to transport Samantha to Barnes-Jewish Hospital. Plaintiffs, citing *Kaiser v. Doll-Pollard*, 398 Ill. App. 3d 652, 659 (2010), argued that Samantha "continued to be exposed to the infectious condition and continued to suffer injury" when plaintiffs drove from Chester to St. Louis. As such, Samantha's injury was "active, ongoing, and 'cumulative,' "—that is, her injury continued "to occur at least until the providers at Barnes-Jewish Hospital were able to surgically intervene and evacuate the infection over the course of several surgeries." Thus, plaintiffs asserted that "part of the transaction and the development of

---

[2]Randall requested compensatory damages against defendants, alleging deprivation "of his spouse's service, affection, society, guidance, companionship, felicity, and sexual relations."

3

[Samantha's] injuries occurred" in St. Clair County while plaintiffs were in transit to Barnes-Jewish Hospital.

¶ 7    On March 23, 2022, Memorial Hospital filed a reply to plaintiffs' response in opposition, arguing that "a drive through a county where no treatment or care was provided does not establish a proper venue to bring this action in." Memorial Hospital claimed plaintiffs were forum shopping in a county that bore no relation to the transaction that was part of plaintiffs' cause of action. Similarly, on March 25, 2022, Drs. Thomas and Sangoseni and their employer, NES Illinois, Inc., filed a reply to plaintiffs' response in opposition, arguing that plaintiffs' 10-mile drive through St. Clair County, which took 15 to 20 minutes, could not establish venue. Additionally, defendants asserted that plaintiffs' decision to drive through St. Clair County was a unilateral act and that plaintiffs failed to identify any integral facts to the cause of action that occurred in St. Clair County.

¶ 8    The circuit court held a hearing all on pending motions on August 16, 2022. Attorney Dede Zupanci, counsel for Memorial Hospital, established that Randall drove 90 minutes from Randolph County to Barnes-Jewish Hospital, passing through Monroe and St. Clair Counties, on January 6, 2021. Plaintiffs' drive through St. Clair County took approximately 20 minutes. Additionally, attorney Shane Chapman, counsel for Drs. Thomas and Sangoseni and NES Illinois, Inc., argued that Samantha was not transported via ambulance or helicopter. Rather, attorney Chapman argued that Randall unilaterally and voluntarily drove Samantha through St. Clair County, despite the availability of alternate routes from Chester to St. Louis.

¶ 9    Next, attorney Nathaniel Brown, counsel for plaintiffs, argued that the evidence demonstrated that Samantha's primary care physician, Dr. Karen Robbins, "advised [Samantha] needed to go to Barnes." As such, Randall did not voluntarily and unilaterally decide to transport Samantha to Barnes-Jewish Hospital. Attorney Brown argued that Samantha's injury was

4

cumulative, where the "infection started in Randolph County[,] and it continued until it was brought under control at Barnes Hospital in St. Louis."

¶ 10    In response, attorney Zupanci clarified the previous use of the word "unilateral," stating the following:

> "Unilateral in this context means the plaintiffs were the only ones acting in St. Clair County. So when the case law says that venue may not be established by unilateral acts, that means that in order to establish venue the defendant must have been acting in St. Clair County and there is no evidence of that because all of the actions that were partaken by defendant in this case occurred in Randolph County."

In response, attorney Brown reiterated, with reliance on *Kaiser*, that the "focus of the inquiry is where the plaintiff suffered her injury," thus, "[t]he presence of a defendant or negligent care, that's not what venue is predicated upon." Attorney Chapman briefly responded that *Kaiser* was dissimilar to the case at issue, noting that there was "a lot more going on in the *Kaiser* case to create venue than a simple passage through St. Clair County."

¶ 11    Following arguments by the parties, the court took the matter under advisement.[3]

¶ 12    On September 2, 2022, the circuit court granted defendants' motions to transfer venue for improper venue. Pursuant to section 2-103(a) of the Code, the court determined venue was proper in Randolph County, where Memorial Hospital's principal office was located and the transaction or some part thereof occurred. The court determined that "[t]he crux of Plaintiffs' cause of action stems from the treatment received at Memorial Hospital, not from the drive through St. Clair

---

[3]We note that the circuit court heard argument by the parties on the issue of *forum non conveniens*. However, only venue is at issue in this appeal.

5

County." As such, the court concluded that Randall "unilaterally driving his wife to Barnes-Jewish through St. Clair County is insufficient to establish proper venue."

¶ 13    This interlocutory appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15    On appeal, plaintiffs argue the circuit court's factual findings were against the manifest weight of the evidence. Additionally, by finding venue improper in St. Clair County, plaintiffs argue that the court improperly applied the transactional venue analysis set forth in section 2-103(a) of the Code. For the reasons that follow, we affirm.

¶ 16    As a threshold matter, we observe that plaintiffs' opening brief does not comply with several mandatory supreme court rules governing appellate review. The purpose of the appellate rules of procedure is to require the parties before the reviewing court to present clear and orderly arguments so the court can properly ascertain and dispose of the issues presented. *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 7. The procedural rules governing the content and format of appellate briefs are not suggestions; they are mandatory. *Rosestone Investments, LLC v. Garner*, 2013 IL App (1st) 123422, ¶ 18. This court has the discretion to strike an appellant's brief and dismiss an appeal for failure to comply with the applicable rules of appellate procedure. *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 12. With these principles in mind, we turn to plaintiffs' opening brief.

¶ 17    Plaintiffs' brief violates several mandatory supreme court rules governing appellate review, including failing to (1) provide a proper table of contents, which contains the headings of the points and subpoints in the argument section with a summary statement, entitled "Points and Authorities" (Ill. S. Ct. R. 341(h)(1) (Nov. 1, 2017)), (2) include page references to the record on appeal for all facts recited in the statement of jurisdiction (Ill. S. Ct. R. 341(h)(4)(ii) (Nov. 1,

6

2017)), and (3) attach an adequate appendix that contains the notice of appeal, as required by Rule 342 (Ill. S. Ct. R. 341(h)(9) (Nov. 1, 2017); R. 342 (eff. Oct. 1, 2019)). Because the dismissal of an appeal is such a severe sanction and these violations do not preclude our review of the appeal (*In re Detention of Powell*, 217 Ill. 2d 123, 132 (2005)), we address plaintiffs' contentions in turn.

¶ 18    Plaintiffs argue the circuit court's factual findings were against the manifest weight of the evidence, where the court determined that (1) none of Samantha's injuries occurred in St. Clair County while in transit to Barnes-Jewish Hospital and (2) Randall "unilaterally" drove Samantha through St. Clair County to Barnes-Jewish Hospital. Additionally, plaintiffs contend that the court erroneously applied the transactional venue analysis under section 2-103 of the Code when it concluded that venue was improper in St. Clair County. We do not agree with plaintiffs.

¶ 19    A defendant who objects to a plaintiff's chosen venue bears the burden of proving that the venue is incorrect. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 155 (2005) (citing *Weaver v. Midwest Towing, Inc.*, 116 Ill. 2d 279, 285 (1987)). The defendant must be able to identify specific facts clearly establishing that the plaintiff's choice of venue is improper. *Id.* In considering a defendant's motion based on improper venue, the circuit court should construe the statute liberally in favor of effecting a change of venue. *Tabirta v. Cummings*, 2020 IL 124798, ¶ 17 (citing *Stambaugh v. International Harvester Co.*, 102 Ill. 2d 250, 261 (1984)). Our Illinois Supreme Court has clarified that a reviewing court will not disturb the circuit court's factual findings unless they are against the manifest weight of the evidence. *Corral*, 217 Ill. 2d at 154. " 'A decision is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence.' " *Id.* at 155 (quoting *Eychaner v. Gross*, 202 Ill. 2d 228, 252 (2002)). A reviewing court may not substitute its own judgment for the judgment of the trier of fact. *Id.* (citing *Kalata v. Anheuser-Busch Cos.*, 144

Ill. 2d 425, 434 (1991)). After reviewing the circuit court's factual findings, we review the court's legal conclusions *de novo*. *Id.* (citing *Eychaner*, 202 Ill. 2d at 252).

¶ 20    Plaintiffs first argue that the circuit court's factual findings were against the manifest weight of the evidence, where the court determined that (1) none of Samantha's injuries occurred in St. Clair County while in transit to Barnes-Jewish Hospital and (2) Randall "unilaterally" drove Samantha through St. Clair County to Barnes-Jewish Hospital. We cannot agree.

¶ 21    We agree with the circuit court that there is no evidence that defendants were negligent in such a way that caused Samantha to suffer injury in St. Clair County. Moreover, there is no evidence in the record that Samantha's condition deteriorated in such a way that Samantha experienced injury during plaintiffs' 20-minute drive through St. Clair County. Additionally, the record supports the circuit court's factual finding that plaintiffs' act of driving from Chester to Barnes-Jewish Hospital was a unilateral act. Defendants in no way acted in St. Clair County, and plaintiffs' actions of driving through St. Clair County did not give rise to the nature of plaintiffs' medical malpractice action. Accordingly, we cannot conclude that the circuit court's factual findings were against the manifest weight of the evidence.

¶ 22    Next, in addressing the circuit court's legal conclusions, plaintiffs do not challenge that Memorial Hospital is a governmental body covered under section 2-103(a) of the Code. Thus, we focus only upon the transactional portion of section 2-103(a) of the Code, which relates specifically to public or municipal corporations and states the following:

> "Actions must be brought against a public, municipal, governmental or quasi-municipal corporation in the county in which its principal office is located or in the county in which the transaction or some part thereof occurred out of which the cause of action arose." 735 ILCS 5/2-103(a) (West 2020).

8

¶ 23 The term "transaction," which has been interpreted broadly, "has been defined to include every fact which is an integral part of a cause of action." *Kenilworth Insurance Co. v. McDougal*, 20 Ill. App. 3d 615, 617 (1974). Under transaction-venue principles, to determine whether the facts that plaintiffs alleged took place in St. Clair County formed a "part" of the transaction, two dependent variables must be analyzed to establish whether a particular venue is proper, including (1) the nature of the cause of action and (2) the place where the cause of action sprang into existence. *Kaiser*, 398 Ill. App. 3d at 656 (citing *Rensing v. Merck & Co.*, 367 Ill. App. 3d 1046, 1050 (2006)).

¶ 24 In determining "the place where the cause of action sprang into existence," courts have determined this to include "the place where the parties carried on significant negotiations or signed an agreement, or where the agreed-upon action was supposed to be or was performed" (*Jackson v. Reid*, 363 Ill. App. 3d 271, 276 (2006)), or " 'where matters occurred that plaintiff has the burden of proving' as part of the cause of action" (*Lake County Riverboat L.P. v. Illinois Gaming Board*, 313 Ill. App. 3d 943, 953 (2000) (quoting *People ex rel. Carpentier v. Lange*, 8 Ill. 2d 437, 441 (1956)). Additionally, "[t]his is generally the place where the parties' direct dealings occurred while in an adversarial position or where events occurred that altered the parties' legal relationship." *Id.* (citing *Williams v. Illinois State Scholarship Comm'n*, 139 Ill. 2d 24, 69 (1990)). Moreover, " 'third-party dealings that have a definite and direct bearing on the cause of action may be considered a part of the transaction out of which the cause of action arose.' " *Jackson*, 363 Ill. App. 3d at 276 (quoting *Southern & Central Illinois Laborers' District Council v. Illinois Health Facilities Planning Board*, 331 Ill. App. 3d 1112, 1117 (2002), *abrogated on other grounds by Corral*, 217 Ill. 2d at 149). We review the court's legal conclusions *de novo*. *Corral*, 217 Ill. 2d at 155 (citing *Eychaner*, 202 Ill. 2d at 252).

9

¶ 25 Plaintiffs allege that Samantha received negligent medical care in Randolph County when Drs. Thomas and Sangoseni and their employers failed to timely and appropriately diagnose and treat Samantha, resulting in the deterioration of her condition that necessitated surgery. On the instruction of Dr. Robbins, plaintiffs traveled to Barnes-Jewish Hospital, in St. Louis, Missouri, where Samantha underwent multiples surgeries that, plaintiffs claim, left her with permanent and ongoing injuries. Accordingly, plaintiffs rely heavily on *Kaiser*, 398 Ill. App. 3d 652, arguing that Samantha suffered a cumulative injury, occurring from the time her condition went undiagnosed at Memorial Hospital to the time she was diagnosed and received surgical care at Barnes-Jewish Hospital. Thus, plaintiffs assert that Samantha experienced injury when she drove through St. Clair County. We find plaintiffs' reliance on *Kaiser* misplaced.

¶ 26 In *Kaiser* (*id.* at 653), the plaintiffs (wife and husband) alleged negligence of the defendant physician for the performance of the wife's hysterectomy at St. Joseph's Hospital in Clinton County, Illinois. The plaintiffs alleged that the defendant both negligently failed to identify the source of the wife's continued bleeding before finishing surgery and then failed to timely diagnose the wife's condition after surgery when she continued to deteriorate. *Id.* at 654. Following surgery, a cardiologist at St. Joseph's Hospital transferred the wife to St. Elizabeth's Hospital in St. Clair County. *Id.* at 653. Surgeons at St. Elizabeth's Hospital performed exploratory surgery, discovering the source of the wife's continued bleeding. *Id.* Nearly two years later, the plaintiffs filed a complaint in St. Clair County, where the wife's diagnosis and treatment occurred following her initial surgery. *Id.* at 654. Defendants filed a motion to transfer the cause to Clinton County. *Id.*

¶ 27 In determining that St. Clair County was an integral part of the plaintiffs' cause of action, this court considered the nature of the plaintiffs' claim. *Id.* at 659. The plaintiffs alleged that the

10

wife suffered injury from hemorrhaging that started when the defendant negligently performed a hysterectomy in Clinton County. *Id.* The plaintiffs also alleged that the wife suffered injury in St. Clair County as a result of the exploratory surgery. *Id.*

¶ 28    This court determined that the wife's alleged injury was "cumulative"—that is, the hemorrhaging started in Clinton County and did not end until surgeons stopped the bleeding in St. Clair County. *Id.* As such, this court noted that any injuries the wife suffered as a result of third-party intervening acts by the surgeons in St. Clair County could be attributed to the risk the defendant physician's negligence created. *Id.* Importantly, this court determined that defendant's failure to provide the wife with appropriate postoperative care constituted "ongoing negligence" that continued until the wife was released from the hospital in St. Clair County. *Id.* at 662. Accordingly, this court determined that the postoperative care the wife received in St. Clair County "simply cannot be considered anything other than an integral part of the surgery the defendant performed in Clinton County." *Id.* This court further opined that St. Clair County had a "substantial connection" to the plaintiffs' cause of action, because "[m]uch of the evidence regarding the cause and extent of the plaintiff's injuries will come from St. Clair County because that is where she was diagnosed and treated." *Id.* at 663.

¶ 29    Here, unlike in *Kaiser*, Samantha's injuries are not substantially connected to St. Clair County. In considering the nature of plaintiffs' claim, plaintiffs' complaint alleged defendants failed to timely diagnosis Samantha with an infectious condition in Randolph County and then appropriately refer her to a specialist. Unlike in *Kaiser*, where the wife suffered a cumulative injury in *both* St. Clair County and Clinton County, here, Samantha received treatment in Randolph County and St. Louis City. Samantha received no care or treatment in St. Clair County. As stated above, there is simply no evidence in the record that defendants diagnosed or treated Samantha in

11

St. Clair County while she was in transit to St. Louis. Additionally, there is no evidence that defendants' negligence caused Samantha's condition to deteriorate in such a way that injury occurred in St. Clair County. As such, dissimilar to *Kaiser*, no evidence regarding the cause and extent of Samantha's injuries will come from St. Clair County to demonstrate Samantha suffered an ongoing injury.

¶ 30     Moreover, unlike in *Kaiser*, here, there are no intervening acts of third parties in St. Clair County that may also be attributable to defendants' negligence. Unlike the plaintiffs in *Kaiser*, here, plaintiffs do not allege that surgical complications following the exploratory surgery performed in St. Louis contributed to Samantha's injury. Instead, plaintiffs argue that Samantha suffered severe and permanent injuries as a result of defendants' untimely diagnosis and treatment of her condition in Randolph County. We note that even if plaintiffs alleged that surgical complications following the exploratory surgery contributed to Samantha's injury, any intervening third-party actions that may also be attributable to defendants' negligence would have taken place in St. Louis City, not St. Clair County. We simply cannot conclude that plaintiffs' act of driving through St. Clair County can be considered an integral part of her cause of action.

¶ 31     Contrary to plaintiffs' argument, the case before us is more analogous to *Jackson*, 363 Ill. App. 3d at 277. In *Jackson*, the plaintiffs brought a medical malpractice action in McLean County, Illinois, alleging defendant physician and her employer breached their duty of care in the performance of a bilateral ureteral implantation. *Id.* In finding venue was proper in Peoria County, Illinois, our colleagues in the Fourth District determined that the parties had no direct dealings with each other in McLean County because defendant physician provided all medical services, treatment, and care to the plaintiff in Peoria County. *Id.* In addition, the Fourth District determined that the plaintiffs' cause of action sprang into existence in Peoria County, because the defendant's

12

determination of the necessity of the procedure, performance of the procedure, and all postoperative care occurred in Peoria County. *Id.*

¶ 32    Lastly, the Fourth District rejected the plaintiffs' argument that the tests ordered and performed by third parties in McLean County constituted an integral part of the cause of action. *Id.* In support of this determination, the Fourth District noted that it was the defendant's *interpretation* of the test results in Peoria County, not the mere testing that was performed in McLean County, that formed the basis of the defendant's decision to perform the surgical procedure in question. *Id.* Thus, the Fourth District was not persuaded that the tests performed in McLean County constituted an integral part of the cause of action. *Id.*

¶ 33    Here, nothing in the record demonstrates that the parties had any direct dealings with each other in St. Clair County. Plaintiffs allege that defendants breached their duty of care to Samantha by failing to timely and appropriately diagnose and treat Samantha's condition, timely refer Samantha to a specialist, and otherwise act as reasonably prudent physicians under the circumstances. The parties interacted in Randolph County on several occasions from December 29, 2020, to January 4, 2021, before physicians at Barnes-Jewish diagnosed Samantha, performed surgery, and provided postoperative care to Samantha in St. Louis City. Similar to *Jackson*, where the defendant's interpretation of test results and decision to perform surgery constituted an integral part of the plaintiff's cause of action in Peoria County, here, the integral parts of plaintiffs' cause of action occurred in Randolph County, where Samantha failed to receive a timely and appropriate diagnosis. As such, the record before us supports a finding that the cause of action sprang into existence in Randolph County.

¶ 34    Based on the foregoing, we cannot conclude that Samantha experienced an ongoing injury in St. Clair County that formed an integral part of plaintiffs' cause of action, provided St. Clair

13

County had little or no relation to the defendants or the transaction that was part of plaintiffs' cause of action. Accordingly, the circuit court did not err in applying the transactional venue analysis set forth in section 2-103(a) of the Code. To find otherwise would run counter to the legislative purpose of venue that " 'a party should not be required to defend an action in a county that has *little or no relation* to the party or the transaction that is the subject of the suit.' " (Emphasis in original.) *Id.* at 275-76 (quoting *Johnson v. Compost Products, Inc.*, 314 Ill. App. 3d 231, 236 (2000), *abrogated on other grounds by Corral*, 217 Ill. 2d at 150-54).

¶ 35    Based on the foregoing, we conclude that the circuit court properly granted defendants' motions to transfer for improper venue.

¶ 36                                    III. CONCLUSION

¶ 37    For these reasons, we affirm the order of the circuit court of St. Clair County granting defendants' motions to transfer for improper venue, where the court's factual findings were not against the manifest weight of the evidence and the court properly applied the transactional venue analysis pursuant to section 2-103(a) of the Code.

¶ 38    Affirmed.

*Draves v. Thomas*, 2023 IL App (5th) 220653

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of St. Clair County, No. 21-L-1011; the Hon. Heinz M. Rudolf, Judge, presiding. |

| | |
|---|---|
| **Attorneys for Appellant:** | Nathaniel O. Brown, Weilmuenster Keck & Brown, P.C., of Belleville, for appellants. |

| | |
|---|---|
| **Attorneys for Appellee:** | Kenneth M. Burke and Shane A. Chapman, of Brown & James, P.C., of Belleville, for appellees James Thomas, Abiodun Sangoseni, and NES Illinois, Inc. |
| | Dawne K. Zupanci, of HeplerBroom LLC, of Edwardsville, for other appellee. |