2020 IL App (1st) 200131

No. 1-20-0131

Filed November 4, 2020

Third Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| JOHNNA BRAUN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| v. | ) | |
| | ) | No. 19 L 40 |
| ASPIDE MEDICAL and BG MEDICAL, LLC, | ) | |
| | ) | |
| Defendants, | ) | Honorable |
| | ) | Moira S. Johnson |
| (BG Medical, LLC, Defendant-Appellant). | ) | Judge presiding |

------------------------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| DAVID CHENEY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| v. | ) | |
| | ) | No. 19 L 42 |
| ASPIDE MEDICAL and BG MEDICAL, LLC, | ) | |
| | ) | |
| Defendants, | ) | Honorable |
| | ) | Moira S. Johnson |
| (BG Medical, LLC, Defendant-Appellant). | ) | Judge presiding |

------------------------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| KATHY VAN RYSWYK, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| v. | ) | |
| | ) | No. 19 L 304 |
| ASPIDE MEDICAL and BG MEDICAL, LLC, | ) | |
| | ) | |
| Defendants, | ) | Honorable |
| | ) | Moira S. Johnson |

No. 1-20-0131

| | | |
|---|---|---|
| (BG Medical, LLC, Defendant-Appellant). | ) | Judge presiding |
| NATSHA STANLEY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| v. | ) | |
| | ) | No. 19 L 9284 |
| ASPIDE MEDICAL and BG MEDICAL, LLC, | ) | |
| | ) | |
| Defendants, | ) | Honorable |
| | ) | Moira S. Johnson |
| (BG Medical, LLC, Defendant-Appellant). | ) | Judge presiding |

JUSTICE BURKE delivered the judgment of the court, with opinion.
Justices McBride and Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs Johnna Braun, David Cheney, Kathy Van Ryswyk, and Natasha Stanley individually sued Aspide Medical (Aspide) and BG Medical, LLC (BG Medical), in the circuit court of Cook County on claims sounding in product liability after surgical meshes implanted in their bodies to repair hernias allegedly caused further injury. Believing venue was improper in Cook County, BG Medical filed a motion to transfer venue to Lake County that the circuit court denied. BG Medical appeals the court's denial and argues that, because neither it nor Aspide reside in Cook County and no part of the transaction from which plaintiffs' claims arose occurred in Cook County, venue in Cook County was improper. For the reasons that follow, we affirm.

¶ 2                                                I. BACKGROUND

¶ 3    Defendant Aspide Medical is a French corporation that designs and manufactures Surgimesh, a synthetic surgical mesh, approved by the Food and Drug Administration for the treatment of abdominal hernias. Defendant BG Medical, LLC, is an Illinois limited liability company that operates as the exclusive distributor of Surgimesh in the United States. Between

- 2 -

August 2015 and January 2018, plaintiffs Johnna Braun, a resident of Arkansas; David Cheney, a resident of New York; Kathy Van Ryswyk, a resident of Washington; and Natasha Stanley, a resident of West Virginia, all had Surgimesh implanted in their bodies to repair hernias. After being implanted with Surgimesh, plaintiffs allegedly suffered further injuries, which necessitated additional medical procedures.

¶ 4    Before 2019, several plaintiffs, who are not a part of this appeal, filed individual lawsuits against Aspide and BG Medical in the circuit court of Cook County after being implanted with Surgimesh. Those cases were consolidated for discovery and pretrial purposes (Pauley v. Aspide Medical, No. 18-L-4464 (Cir. Ct. Cook County)).

¶ 5    In January 2019, Braun, Cheney, and Van Ryswyk individually filed multicount complaints in the circuit court of Cook County against Aspide and BG Medical. Stanley did the same in August 2019. The complaints were nearly identical, each comprising four counts against Aspide and four counts against BG Medical for strict liability, negligence, breach of express warranty, and breach of implied warranties. The crux of the allegations was that defendants designed, manufactured, advertised, and sold Surgimesh as a medical product to repair hernias but that the product was improperly designed and manufactured for its intended purpose, that defendants failed to adequately warn medical professionals and the public at large of the risks associated with the product, and that defendants marketed the product as safe despite the associated risks.

¶ 6    In response to each complaint, BG Medical filed a motion to transfer venue from Cook County to Lake County, arguing that venue in Cook County was improper because neither it nor Aspide resided there and no part of the transaction from which plaintiffs' claims arose occurred

there. In support of each motion, BG Medical attached a printout from the Illinois Secretary of State's website stating that Aspide was not registered to do business in Illinois.

¶ 7    BG Medical also attached an affidavit from John Huelskamp, its president, wherein he stated that BG Medical was the exclusive United States distributor of Surgimesh, a medical product designed and manufactured by Aspide. According to Huelskamp, he and his wife were the sole members of BG Medical, and both resided in Lake County, Illinois. Huelskamp averred that, in December 2018, BG Medical moved its only office from Cook County to Deer Park, Illinois, located in Lake County. In addition, Huelskamp stated that BG Medical's registered agent was in Lake County. Huelskamp asserted that BG Medical did not conduct any meaningful business in Cook County, noting that, in 2018, it sold approximately $4900 worth of Surgimesh to two hospitals in Cook County. Additionally, Huelskamp stated that BG Medical's 2018 revenue from selling Surgimesh in Cook County accounted for 0.05% of its 2018 revenue in Illinois and 0.0007% of its 2018 revenue in the United States. Lastly, Huelskamp stated that, thus far in 2019, BG Medical had no revenue from selling Surgimesh in Cook County, it did not employ a sales representative to solicit sales of Surgimesh in Cook County, and it had no sales contracts with any of the hospitals or surgical centers located in Cook County. While BG Medical filed its motion to transfer venue, Aspide challenged the circuit court's personal jurisdiction over it, resulting in Aspide not being a party to this appeal. According to BG Medical, as of the filing of its opening brief, Aspide's motion remains pending in the circuit court.

¶ 8    By September 2019, Braun, Cheney, Van Ryswyk, and Stanley's cases had been consolidated with the several other hernia mesh cases for discovery and pretrial purposes only. The following month, Braun, Cheney and Van Ryswyk filed a combined response to BG Medical's motion to transfer venue, and Stanley filed a separate response. In both motions, plaintiffs argued

that Surgimesh entered the stream of commerce through BG Medical, which, at the time they had their surgeries, conducted all of its activities in Cook County. As such, according to plaintiffs, part of the underlying transaction occurred in Cook County, thus making venue proper there.

¶ 9    BG Medical replied and maintained that no part of the transaction of any of plaintiffs' causes of action occurred in Cook County. In support, it attached another affidavit from Huelskamp, wherein he stated that BG Medical purchased Surgimesh directly from Aspide and sold the product directly to hospitals and physician offices, not to patients.

¶ 10    Following the parties' briefings, the circuit court entered a written ruling, initially observing that venue was proper in a county where (1) any defendant brought in good faith resides or (2) the transaction or some part thereof from which the plaintiffs' claims arose occurred. With regard to the transactional pathway, the court noted that BG Medical was the exclusive distributor in the United States of Aspide's Surgimesh product. Relying on information from BG Medical's website, the court observed that BG Medical promoted itself as a sales and marketing distribution partner of Aspide. Highlighting that plaintiffs' lawsuits sounded in product liability, the court determined that the location of the accident was not as significant as traditional personal injury actions. Because plaintiffs' basis of liability against BG Medical was its marketing and selling of an allegedly dangerous and defective medical product, which occurred while BG Medical was based in Cook County, the court concluded that at least part of the transaction from which plaintiffs' claims arose occurred in Cook County.

¶ 11    Regarding venue based on BG Medical's residence, the circuit court's conclusion was less clear. The court observed that, at the time the earlier lawsuits against BG Medical and Aspide were filed—the ones that plaintiffs' cases were ultimately consolidated with for discovery and pretrial purposes only—BG Medical had yet to move its office to Lake County and thus was a resident of

Cook County for venue purposes. As such, the court found that "venue in Cook County is proper." Later in its order, the court reiterated that, "[a]t the time the first twelve consolidated actions were filed, BG Medical had its main office in Cook County" and repeated its finding regarding the transactional pathway. The court then concluded again that "venue is proper in Cook County" and ultimately denied BG Medical's motion to transfer venue.

¶ 12     Thereafter, BG Medical successfully petitioned this court for leave to appeal pursuant to Illinois Supreme Court Rule 306(a)(4) (eff. Oct. 1, 2019).

¶ 13                                    II. ANALYSIS

¶ 14     On appeal, BG Medical contends that the circuit court improperly denied its motion to transfer venue from Cook County to Lake County where neither it nor Aspide were residents of Cook County under the venue rules and no part of the transaction out of which plaintiffs' causes of action arose occurred in Cook County.

¶ 15                              A. Venue Generally

¶ 16     "Proper venue is an important statutory privilege" (*Bucklew v. G.D. Searle & Co.*, 138 Ill. 2d 282, 288 (1990)), and the defendant is entitled to have a lawsuit proceed in a proper venue so long as it timely raises an objection. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 154 (2005). Section 2-101 of the Code of Civil Procedure (Code) (735 ILCS 5/2-101 (West 2018)) provides the general venue rule in Illinois:

> "Except as otherwise provided in this Act, every action must be commenced (1) in
> the county of residence of any defendant who is joined in good faith and with
> probable cause for the purpose of obtaining a judgment against him or her and not
> solely for the purpose of fixing venue in that county, or (2) in the county in which

the transaction or some part thereof occurred out of which the cause of action arose."

When a defendant files a motion to transfer venue, it has the burden to prove that the venue in which the plaintiff brought the action was improper. *Corral*, 217 Ill. 2d at 155. In doing so, the defendant must provide specific facts, not mere conclusions, demonstrating a clear right to transfer venue. *Id.* " 'Any doubts arising from the inadequacy of the record will be resolved against the defendant.' " *Id.* (quoting *Weaver v. Midwest Towing, Inc.*, 116 Ill. 2d 279, 285 (1987)).

¶ 17 When ruling on a motion to transfer venue, the circuit court is faced with both a question of law and fact. *Id.* at 153-54. The court must make certain factual findings and then determine the legal effect of those findings. *Id.* at 154. Given the court must determine the legal effect of certain factual findings, we employ a bifurcated standard of review. *Id.* We review the court's factual findings with deference and may only reverse those findings if they are against the manifest weight of the evidence. *Id.* However, we review the court's ultimate legal determination *de novo*. *Id.*

¶ 18 Under section 2-101 of the Code (735 ILCS 5/2-101 (West 2018)), there are two pathways to proper venue: (1) the residency pathway and (2) the transactional pathway. An exception exists if all the defendants are nonresidents of Illinois, in which case an action may be commenced in any county in Illinois. *Id.* However, BG Medical is indisputably an Illinois resident, meaning venue was proper in Cook County only if it or Aspide were residents of Cook County or if part of the transaction from which plaintiffs' claims arose occurred in Cook County.

¶ 19 B. Residency Pathway

¶ 20 Initially, we note that plaintiffs do not assert that Cook County was a proper venue under the residency pathway. However, given the ambiguity of the circuit court's order denying BG

Medical's motion to transfer venue and whether it found venue was proper in Cook County based on BG Medical's residence there previously, we will address the residency pathway.

¶ 21 The residence of a defendant is determined when the plaintiff initiates a lawsuit, "not at the time of service of process or at the time of the accrual of the cause of action." *Wilson v. Central Illinois Public Service Co.*, 165 Ill. App. 3d 533, 537 (1988). Section 2-102 of the Code (735 ILCS 5/2-102 (West 2018)) defines the residence of various business forms for venue purposes. In relevant part, a private Illinois corporation or a foreign corporation authorized to do business in Illinois "is a resident of any county in which it has its registered office or other office or is doing business"; a partnership "is a resident of any county in which any partner resides or in which the partnership has an office or is doing business"; and a voluntary unincorporated association "is a resident of any county in which the association has an office or, if on due inquiry no office can be found, in which any officer of the association resides." *Id.* Additionally, a foreign corporation that is not authorized to transact business in Illinois is considered a nonresident of Illinois. *Id.* § 2-102(a). As such, because Aspide is a French corporation and not authorized to conduct business in Illinois, it is not considered a resident of any county in Illinois. Thus, whether Cook County was a proper venue based on the residency pathway hinges on BG Medical's status.

¶ 22 Notably absent from section 2-102 of the Code (*id.* § 2-102) is a definition of the residence of a limited liability company, which is the organizational form of BG Medical. There are no decisions from Illinois stating what residency definitions apply to a limited liability company for venue purposes. See Keith H. Beyler, *Illinois Venue Reform: Not Tort Reform Rants*, 43 Loy. U. Chi. L.J. 757, 772 (2012) (finding "it is undecided in Illinois which venue rules apply to limited liability companies" though asserting that the residency rules of voluntary unincorporated associations would likely apply). Assuming *arguendo* that a limited liability company would be

treated as a voluntary unincorporated association for venue purposes, BG Medical would not be considered a resident of Cook County at the time plaintiffs filed their lawsuits. Based on the affidavit of John Huelskamp, BG Medical's president, which is proper supporting evidence for a motion to transfer venue (see 735 ILCS 5/2-104(c) (West 2018)), BG Medical moved its sole office from Cook County to Lake County in December 2018, and he and his wife, the only two members of BG Medical, lived in Lake County. It is undisputed that Braun, Cheney, Van Ryswyk, and Stanley filed their lawsuits in 2019, meaning when they did so, BG Medical had no office in Cook County and its members did not reside there. Thus, if a limited liability company were treated as a voluntary unincorporated association for venue purposes, the inquiry of BG Medical's residency would be over. See *id.* § 2-102(c) (providing that a voluntary unincorporated association "is a resident of any county in which the association has an office or, if on due inquiry no office can be found, in which any officer of the association resides").

¶ 23    But it is possible that a limited liability company would not be treated as a voluntary unincorporated association for venue purposes. See, *e.g.*, *Ex Parte Miller, Hamilton, Snider & Odom, LLC*, 942 So. 2d 334, 336-37 (Ala. 2006) (where "no Alabama venue statute mentions limited liability companies" and the defendant law firm, a limited liability company, had been treated as a partnership for federal tax purposes for several years, the Alabama Supreme Court held that the law firm would be treated as a partnership for venue purposes, not as a corporation or unincorporated association). If a limited liability company were treated as a corporation or partnership for venue purposes, a further inquiry beyond where BG Medical had its office and where Huelskamp and his wife resided at the time plaintiffs filed their lawsuits would be necessary because the residency definitions of a private corporation and partnership allow for residency in a county where the company is "doing business." 735 ILCS 5/2-102(a), (b) (West 2018).

¶ 24    A company is "doing business" for venue purposes in a county where it is "conducting its usual and customary business" such that its activities are of " 'such a nature so as to localize the business and make it an operation within the district.' " *Baltimore & Ohio R.R. Co. v. Mosele*, 67 Ill. 2d 321, 329-30 (1977) (quoting *Remington Rand, Inc. v. Knapp-Monarch Co.*, 139 F. Supp. 613, 617 (E.D. Pa. 1956)). In other words, we must analyze the nature and extent of the business activities of the company in the county in question. *Bucklew*, 138 Ill. 2d at 291, 293. The mere fact that a company solicits business in a county, sells goods or service in a county, engages in promotional activities in a county, or buys large quantities of a product in a county are insufficient to prove that the company is doing business there. See *id.* at 292-94; *Gardner v. International Harvester Co.*, 113 Ill. 2d 535, 540-42 (1986).

¶ 25    Rather, to determine whether a company is doing business in a particular county, we generally analyze the proportion of the company's overall business occurring in that county as well as any other relevant factors that may be unique to the business. See *Bucklew*,138 Ill. 2d at 293; *Reynolds v. GMAC Financial Services*, 344 Ill. App. 3d 843, 848 (2003). For instance, in *Stambaugh v. International Harvester Co.*, 102 Ill. 2d 250, 259 (1984), our supreme court found that, where a business's sales in a county amounted to 0.05% of its overall sales, that was an insufficient amount of business to be considered conducting its usual and customary business in that county. Similarly, in *Bucklew*, 138 Ill. 2d at 292-93, our supreme court found that, where a business's sales in a county amounted to between 0.12 and 0.13% of its overall sales, that was an insufficient amount of business to be considered conducting its usual and customary business in that county.

¶ 26    In this case, based on Huelskamp's affidavit, BG Medical's revenue from selling Surgimesh in Cook County accounted for 0.05% of its 2018 revenue in Illinois and 0.0007% of its

2018 revenue in the United States. In 2019, BG Medical had no revenue from sales of Surgimesh in Cook County and did not employ a sales representative to solicit sales of Surgimesh in Cook County. Though BG Medical's sales of Surgimesh in Cook County were undoubtedly inconsequential to its overall business, nothing in Huelskamp's affidavit indicated that its business was solely limited to the sale of Surgimesh. While BG Medical is the exclusive United States distributor of Surgimesh, that did not necessarily preclude BG Medical from selling other medical products. For all we know, BG Medical could have sold other medical products in Cook County and done so pervasively. BG Medical, as the defendant, had the burden to prove that venue in Cook County was improper and must do so by providing specific facts, not mere conclusions. *Corral*, 217 Ill. 2d at 155. Any doubts from the record must be resolved against BG Medical. *Id.*

¶ 27    Although Huelskamp's affidavit stated that "BG Medical does not conduct any meaningful business in Cook County," his affidavit failed to provide any specific facts about whether BG Medical's business was limited to just the sale of Surgimesh or if it had other ventures, which would have provided the full scope of its business activities in Cook County. Because of this inadequacy of proof, we could find that BG Medical failed to meet its burden in proving that venue in Cook County was improper. However, to do so, we would first need to conclude that a limited liability company should be treated as a private corporation or partnership, rather than a voluntary unincorporated association, for venue purposes. But because the second pathway to proper venue—the transactional pathway—provides a second, and independent, basis of establishing venue in Cook County and because the circuit court correctly found that part of the transaction from which plaintiffs' claims arose occurred in Cook County, we need not resolve this open question about how to treat a limited liability company for purposes of venue residency rules.

¶ 28                        C. Transactional Pathway

¶ 29    Under the transactional pathway, an action must be commenced "in the county in which the transaction or some part thereof occurred out of which the cause of action arose." 735 ILCS 5/2-101 (West 2018). The phrase should be interpreted broadly and liberally. *Tipton v. Estate of Cusick*, 273 Ill. App. 3d 226, 228 (1995).

¶ 30    In determining whether venue was proper under the transactional pathway in this case, we find *Rensing v. Merck & Co.*, 367 Ill. App. 3d 1046 (2006), instructive. In that case, a plaintiff filed a class action complaint in St. Clair County sounding in fraud against a drug manufacturer for marketing and selling the drug Vioxx as safe and effective for people with hypertension despite allegedly being aware that clinical trials associated hypertension-related adverse health effects with Vioxx. *Id.* at 1046. At issue on appeal was whether the circuit court properly denied the defendant's motion to transfer venue to Cook County. *Id.* at 1047. In resolving this issue, the appellate court stated that the two factors it would examine were the nature of the cause of action and the place where the cause of action sprang into existence. *Id.* at 1050. The court further remarked that, in cases involving consumer fraud, the action "springs into existence where the alleged acts concerning the fraud took place." *Id.* "This is the place where the product is manufactured and/or the place where the decisions regarding any advertising, promotion, and/or nondisclosure take place," not where any plaintiffs purchased the product. *Id.* Ultimately, because the defendant's advertising, promotion, and nondisclosure did not occur in St. Clair County and the plaintiffs only purchased Vioxx there, the appellate court reversed the circuit court's ruling and found venue was improper in St. Clair County. *Id.* at 1051.

¶ 31    However, BG Medical argues that the two-factor framework of *Rensing*, which it alleges the circuit court utilized in denying its motion to transfer venue, contravenes the framework set forth by our supreme court in *Williams v. Illinois State Scholarship Comm'n*, 139 Ill. 2d 24 (1990).

In *Williams*, plaintiffs filed a class action to prevent an Illinois state agency from filing collections actions on their defaulted and delinquent student loans in Cook County. *Id.* at 28. In determining whether venue would be proper in Cook County for the agency to file their collections actions, our supreme court discussed the transactional pathway for venue and highlighted how the operative phrase "transaction or some part thereof" had been defined previously. *Id.* at 68-69.

¶ 32    The court noted one definition was "the place where 'any significant negotiations were carried on between the parties, where an agreement was signed, the place where it was, or was supposed to be performed, or where matters occurred that plaintiff has the burden of proving.' " *Id.* at 68 (quoting *People ex rel. Carpentier v. Lange*, 8 Ill. 2d 437, 441 (1956)). The court observed other definitions as "the place where dealings between the parties themselves occurred while they were in an adversarial position [citations] or where an event or act which alters the legal relation of the parties took place." *Id.* at 69 (citing *Christopher v. West*, 345 Ill. App. 515, 528 (1952); *Winn v. Vogel*, 345 Ill. App. 425, 431-32 (1952); *La Ham v. Sterling Canning Co.*, 321 Ill. App. 32, 44 (1943)). Ultimately, our supreme court found that venue would not be proper in Cook County because there was no evidence that there was any personal or direct dealings between the plaintiffs and the state agency in Cook County and because the acts that altered the legal relationship of the parties, *i.e.*, signing for the loans, did not occur in Cook County. *Id.* at 69-70. As such, "none of the integral parts of these transaction occurred in Cook County." *Id.* at 70.

¶ 33    According to BG Medical, the circuit court ignored the two-factor framework in *Williams*—(1) where any personal and direct dealings occurred between the parties and (2) where the acts that altered the legal relationship of the parties occurred—and instead used the alternate framework from *Rensing* that considered the nature of the cause of action and where the cause of action sprang into existence. We disagree that the *Williams* framework is meaningfully different

from the framework stated in *Rensing*. Notably, in *Lake County Riverboat L.P. v. Illinois Gaming Board*, 313 Ill. App. 3d 943, 952 (2000), this court asserted that, in determining venue under the transactional pathway, the two factors that must be analyzed were the nature of the cause of action and the place where the cause of action sprang into existence. The court then stated "[t]his is generally the place where the parties' direct dealings occurred while in an adversarial position or where events occurred that altered the parties' legal relationship." *Id.* at 953 (citing *Williams*, 139 Ill. 2d at 69). In other words, the only difference between the frameworks of *Williams* and *Rensing* is semantics. Each variation of the essentially same framework has its place based on the specifics of the case, such as in *Williams*, which at its core was a contracts case involving students who were delinquent or had defaulted on their student loans, or in *Rensing*, which at its core was a fraud case. Consequently, the framework from *Rensing* does not contravene *Williams*, as they are two sides of the same coin, and the *Rensing* framework may be properly used to determine whether venue is proper under the transactional pathway. In fact, it has been used in several other cases beyond *Rensing* and *Lake County Riverboat*. See, *e.g.*, *Terada v. Eli Lilly & Co.*, 2015 IL App (5th) 140170, ¶ 23; *Board of Education of Nippersink School District 2 v. Koch*, 2012 IL App (2d) 120132, ¶ 13; *Boxdorfer v. DaimlerChrysler Corp.*, 339 Ill. App. 3d 335, 344 (2003).

¶ 34    Although in *Rensing* the case involved a consumer fraud cause of action, we find such a cause of action similar to the causes of action raised by plaintiffs against BG Medical in this case. We therefore will examine the nature of the cause of action and the place where the cause of action sprang into existence to determine if venue was proper in Cook County under the transactional pathway. In doing so, any element, and the facts supporting it, that the plaintiff must prove to sustain his or her cause of action may be used to establish venue. *Kaiser v. Doll-Pollard*, 398 Ill. App. 3d 652, 656 (2010).

¶ 35    As noted, plaintiffs each brought four causes of action against BG Medical, including for strict liability and negligence. In a strict liability claim, one element the plaintiff must prove is that the product was unreasonably dangerous. *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 543 (2008). And a product may be unreasonably dangerous because of a party's failure to adequately warn of the product's risks. *Hammond v. North American Asbestos Corp.*, 97 Ill. 2d 195, 206 (1983). In a negligence claim, one element the plaintiff must prove is that the defendant breached its duty of care. *Calles v. Scripto-Tokai Corp.*, 224 Ill. 2d 247, 270 (2007). And, under certain circumstances, the defendant's failure to warn of a product's risks may "constitute a breach of duty upon which an action for negligence might be predicated." *Lewis v. Lead Industries Ass'n*, 342 Ill. App. 3d 95, 100 (2003). Indeed, in support of plaintiffs' causes of action for strict liability and negligence against BG Medical, they alleged that BG Medical failed to adequately warn medical professionals and the public at large to the risks of Surgimesh and alleged that BG Medical marketed the product as safe despite the many adverse consequences associated with its implantation.

¶ 36    There is no dispute that, at the time plaintiffs were implanted with Surgimesh, BG Medical was based in Cook County. And, as the circuit court found, relying on BG Medical's own website, a proper source of judicial notice (see *Innovative Garage Door Co. v. High Ranking Domains, LLC*, 2012 IL App (2d) 120117, ¶ 4 n.1), BG Medical was a sales and marketing distribution partner of Aspide. Notably, in Huelskamp's affidavit, while he averred that BG Medical did not design or manufacture Surgimesh, there was no similar averment to marketing Surgimesh. Taken together, at the time plaintiffs were implanted with Surgimesh, BG Medical formulated its marketing efforts of Surgimesh while its sole office was in Cook County. Given that the allegations in plaintiffs' complaints concerned, in part, the failure to transparently market and promote

Surgimesh and that there is nothing demonstrating that those advertising decisions did not originate from BG Medical's sole office in Cook County, some part of the transaction out of which plaintiffs' causes of action arose occurred in Cook County. See *Rensing*, 367 Ill. App. 3d at 1050 (in cases where plaintiffs have alleged defendants' failure to disclose material facts regarding products, the action "springs into existence" "where the product is manufactured and/or the place where the decisions regarding any advertising, promotion, and/or nondisclosure take place").

¶ 37    Still, BG Medical argues that we should view the present case like a personal injury case. Relying on *Kaiser*, 398 Ill. App. 3d 652, *Jackson v. Reid*, 363 Ill. App. 3d 271 (2006), and *Peterson v. Monsanto Co.*, 157 Ill. App. 3d 508 (1987), BG Medical asserts that, in personal injury actions, the place of the transaction for venue purposes is where the injury occurs. Although the present case undoubtedly involves all the plaintiffs suffering personal injuries, this case involves more than just injuries. As mentioned, several of the principal allegations that plaintiffs will have to prove involve misrepresentations and omissions by BG Medical in its marketing and promotion of Surgimesh, making these cases similar to fraud cases for determining where the transaction or some part thereof occurred. Consequently, the circuit court properly found venue was proper in Cook County and correctly denied BG Medical's motion to transfer venue to Lake County

¶ 38                                    III. CONCLUSION

¶ 39    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 40    Affirmed.

**No. 1-20-0131**

| | |
|---|---|
| **Cite as:** | *Braun v. Aspide Medical*, 2020 IL App (1st) 200131 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 19-L-40, 19-L-42, 19-L-304, 19-L-9284; the Hon. Moira S. Johnson, Judge, presiding. |
| **Attorneys for Appellant:** | Jeffrey M. Schieber and Paul J. Coogan, of Taft Stettinius & Hollister LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Allen N. Schwartz and Jennifer K. Scifo, of Kravolec, Jambois & Schwartz, of Chicago, and Robert L. Salim and Lisa Causley-Streete, of Salim-Beasley, LLC, of Natchitoches, Louisiana, for appellees. |