**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 230225-U

Order filed November 6, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| | ) | Will County, Illinois, |
| Plaintiff-Appellee, | ) | |
| | ) | Appeal No. 3-23-0225 |
| v. | ) | Circuit No. 15-AR-663 |
| | ) | |
| STEVE S. YUN, | ) | Honorable |
| | ) | Roger Rickmon, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Peterson and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The trial court properly struck fraudulent documents submitted by the defendant in support of his counterclaim and correctly granted summary judgement in favor of the plaintiff and against the defendant.

¶ 2    Plaintiff-Appellee Bank of America, N.A (the Bank) sued Defendant-Appellee Steve S. Yun (Yun) for breach of contract and account stated, alleging that Yun had failed to make payments on his credit card account. Yun filed a counterclaim against the Bank under the federal Fair Credit Reporting Act (FCRA) (15 U.S.C. § 1681 *et seq*. (2012)). The trial court granted the

Bank's motion for summary judgment as to Yun's FCRA counterclaim, denied Yun's motion for summary judgment, and entered sanctions against Yun. Yun appeals.

¶ 3                                I. BACKGROUND

¶ 4        In December 2008, Yun opened a credit card account with the Bank. Yun's account number ended in "1314."[1] On April 18, 2014, Yun stopped making the required payments due on the account. On November 29, 2014, the Bank closed (charged off) the account and changed the account number, as was its standard practice. The new account number ended in "6816."

¶ 5        On September 18, 2015, the Bank sued Yun to collect the unpaid balance, fees, and interest due on Yun's account, which amounted to approximately $24,000. The Bank's amended complaint asserted two causes of action: (1) breach of contract; and (2) account stated. Yun filed an answer to the Bank's amended complaint, along with affirmative defenses and six counterclaims. Five of the counterclaims alleged violations of the federal Truth in Lending Act (TILA) (15 U.S.C. § 1601 *et seq.* (2012)). The sixth counterclaim was entitled "Defamation of Character and Denial of Credit."

¶ 6        The Bank filed a motion to dismiss Yun's counterclaims with prejudice, pursuant to section 2-619 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2-619 (West 2014)). In its motion, the Bank argued that 1) Yun's five TILA-based counterclaims were barred by TILA's one-year statute of limitations (15 U.S.C. § 1640(e) (2012)), and 2) Yun's remaining counterclaim was subject to dismissal because it was barred by the Illinois statute of limitations for defamation claims (735 ILCS 5/13-201 (West 2014)) and because it was pre-empted by the FCRA.

---

[1] The account numbers relevant to this appeal are confidential. Accordingly, we refer only to the final four digits of each account number, pursuant to Illinois Supreme Court Rule 138(c) (eff. Jan. 1, 2018).

¶ 7        On November 9, 2017, the trial court found Yun's TILA counterclaims to be time-barred and dismissed them with prejudice. However, the court permitted Yun to raise his TILA counterclaims as a single affirmative defense of "recoupment or off-set." The court also allowed Yun to amend his sixth counterclaim.

¶ 8        In December 2017, Yun filed his first amended affirmative defenses and first amended counterclaim. Yun restated all his previously-dismissed TILA-based counterclaims as affirmative defenses. Yun sought damages based on those affirmative defenses, including damages for incorrect credit charges, compensation for lost time, and statutory penalties. He also asserted an amended counterclaim that he labeled "Lost Profit by Denial of Credit," seeking damages for profits he had allegedly lost from potential business opportunities as a result of the Bank's improper denial of credit and the negative credit reports that the Bank had issued to consumer credit reporting agencies.

¶ 9        In January 2018, the bank filed a 2-619 motion to dismiss Yun's first amended affirmative defenses and first amended counterclaim with prejudice. In its motion, the Bank argued that Yun's first amended affirmative defenses should be stricken because they were merely a relabeling of the prior counterclaims that the trial court had dismissed with prejudice as time-barred. The Bank further contended that Yun's amended counterclaim should be dismissed because the FCRA preempts any state law claims related to the responsibility of entities that furnish information to consumer credit reporting agencies.

¶ 10        On February 5, 2018, Yun filed a response in opposition to the Bank's motion to dismiss. In his response, Yun argued that the Bank had failed to meet its obligations under the FCRA in several respects. Specifically, Yun asserted that the Bank had reported inaccurate information to a credit reporting agency (TransUnion), failed to correct the inaccuracies upon Yun's request, and

3

failed to conduct an investigation into the matter after receiving a dispute notice from TransUnion. In support of these assertions, Yun presented copies of documents he claimed to have sent to the Bank in February and March of 2013 notifying the Bank that it had committed billing errors and asking the Bank to correct the errors. Yun claimed that the Bank failed to respond to his requests.

¶ 11 Yun further asserted that he had reported his billing dispute with the Bank to TransUnion in September 2014. In support of this assertion, Yun attached to his response a copy of a letter dated September 19, 2014, that was addressed to TransUnion and signed by Yun. This was the first time that Yun introduced the September 19, 2014, letter into the record. In the letter, Yun stated that he was engaged in an ongoing dispute with the Bank over billing errors, that he had sent the Bank a written notice identifying the alleged errors and asking the Bank to correct them, and that the Bank had neither responded to Yun's billing error notice nor corrected the errors. The letter stated that the Bank should have corrected the billing errors "according to FCBA [*sic*] requirements," but failed to do so. The letter further stated that the Bank had illegally reported inaccurate adverse information to TransUnion. Yun informed TransUnion that TransUnion had to "investigate the incorrect adverse records with [the] Bank," correct the inaccurate information, and "remove the delinquency report immediately."

¶ 12 Yun claimed that, after TransUnion received his letter, it sent an Automated Consumer Dispute Verification (ACDV) form to the Bank through its "e-OSCAR" system, which triggered the Bank's obligations under the FCRA to investigate the matter and make all necessary corrections. Yun alleged that the Bank did not respond to TransUnion's ACDV and failed to investigate and correct the alleged billing errors, in violation of §1681s-2(b) of the FCRA. (15 U.S.C. § 1681s-2(b) (2012)). Yun argued that he was entitled to damages for lost business

4

opportunities and other harm he had sustained as a result of the Bank's improper denial of credit and its furnishing of inaccurate negative credit reports to TransUnion.[2]

¶ 13    Yun did not produce the ACDV form that he claimed TransUnion had sent to the Bank. Nor did he produce any other evidence suggesting that TransUnion had forwarded Yun's letter to the Bank or otherwise communicated Yun's demands to the Bank.

¶ 14    On February 26, 2018, the trial court dismissed with prejudice Yun's five amended affirmative defenses that were based upon the alleged TILA violations. However, it granted Yun leave to replead his first amended counterclaim.

¶ 15    On March 20, 2018, Yun filed his second amended affirmative defenses and his second amended counterclaims. He again restated all of his previously-dismissed TILA-based counterclaims as affirmative defenses. Yun's second amended counterclaims restated all of his previously dismissed TILA-based counterclaims as new counterclaims for set-off. In addition, Yun asserted a claim under the FCRA based upon the statements included in the September 19, 2014, letter.

¶ 16    During a subsequent status hearing, the trial court clarified that it had previously dismissed with prejudice all of Yun's second amended counterclaims that were based upon TILA violations, and again ruled that any of defendant's affirmative defenses that were based upon TILA violations were limited to set-off or recoupment.

¶ 17    In May 2018, the Bank filed a section 2-619 motion to dismiss defendant's sole remaining counterclaim—the counterclaim that was based upon violations of the FCRA. In the motion, the

_____

[2] Although Yun attempted to support his first amended counterclaim with allegations that the Bank had violated its obligations under the FCRA, he did not explicitly assert a claim under the FCRA. Rather, he purported to assert a claim under Illinois law for "Lost Profit by Denial of Credit."

Bank alleged that the counterclaim was subject to dismissal because it was barred by the FCRA's two-year statute of limitations (15 U.S.C. § 1681(p)(1) (2012)). The trial court granted the Bank's motion. Yun filed a motion to reconsider, which the trial court denied. At that time, the Bank voluntarily dismissed all of its claims against Yun.

¶ 18    Yun appealed the trial court's rejection of his initial three affirmative defenses and its dismissal of his counterclaims. *Bank of America, N.A. v. Steve S. Yun*, 2020 IL App (3d) 180691-U, ¶ 34. We took no action on Yun's claim of error regarding his affirmative defenses because the trial court had not entered a final order as to them. *Id.* ¶¶ 24-25. We affirmed the trial court's dismissal of Yun's TILA-based counterclaims. *Id.* ¶¶ 26-37. However, we reversed the trial court's dismissal of Yun's FCRA-based counterclaim as untimely. *Id.* ¶¶ 38-45. Although we found that the counterclaim was filed after the FCRA's statute of limitations had expired, we held that the counterclaim was not time-barred in Illinois because it was saved by the Illinois counterclaim savings statute (735 ILCS 5/13-207 (West 2016)). *Id.* ¶¶ 38-45. Accordingly, we remanded the matter for further proceedings. *Id.* ¶¶ 47-48.

¶ 19    On remand, the Bank filed a motion to dismiss under section 2-619(a)(9) of the Code, arguing that an 'affirmative matter" outside of Yun's complaint defeated his claim as a matter of law. In support of its motion, the Bank submitted the declaration of Tom Jordan, an assistant vice president of the Bank who served as an operations consultant in the Bank's legal order and case resolution operations group. Jordan declared that the Bank did not receive any ACDVs relating to Yun's account from TransUnion or from any other credit reporting agency. To establish a violation of the FCRA, Yun had to show that the Bank had received notice of Yun's dispute from TransUnion. The Bank argued that, because Yun had not made that showing, Yun's FCRA claim failed as a matter of law.

6

¶ 20        The trial court granted Yun leave to depose Jordan. The bank provided proposed dates for the deposition, but Yun declined to depose Jordan.

¶ 21        Yun filed a response to the Bank's motion to dismiss. On April 12, 2021, the trial court heard argument on the Bank's motion and gave Yun 48 hours to submit additional documents in support of his FCRA counterclaim. Two days later, Yun submitted a document which he identified as "TransUnion's Notification for [the Bank] to Investigate and Return." That document consisted of: (1) a document titled "Automated Consumer Dispute Verification Form," dated September 26, 2014; and (2) a letter dated September 19, 2014 addressed to TransUnion and signed by Yun. The text of that letter was identical to the September 19, 2014, letter that Yun had attached to several of his previous filings. However, the new version included a TransUnion logo at the top, faded text in the top right corner, and modified text wrapping. Yun maintained that the logo was stamped on the letter by TransUnion, which proved that TransUnion had forwarded the letter to the Bank.

¶ 22        On April 19, 2021, the trial court granted the Bank's motion to dismiss with prejudice.

¶ 23        On May 17, 2021, Yun filed a second appeal to our appellate court, challenging the dismissal of his FCRA counterclaim along with several other rulings, including the trial court's denial of a motion for civil contempt that Yun had filed against the Bank, and the trial court's denial of Yun's motion to amend his counterclaim to add a prayer for punitive damages. *Bank of America, N.A. v. Steve S. Yun*, 2022 IL App (3d) 210210.

¶ 24        On May 18, 2022, we reversed the trial court's dismissal of Yun's FCRA counterclaim under section 2-619(a)(9), finding that Yun's counterclaim and the Bank's motion to dismiss raised disputed factual issues that were not appropriate for dismissal pursuant to section 2-619(a)(9). *Id.* ¶ 11. Our court affirmed the remaining orders of the trial court and remanded the matter for further proceedings on Yun's FCRA counterclaim. *Id.* ¶¶ 10, 12-17.

7

¶ 25    On remand, Yun filed a third amended counterclaim under the FCRA.  In support of the counterclaim, Yun submitted the September 19, 2014 letter bearing the TransUnion logo and the "Automated Consumer Dispute Verification Form" dated September 26, 2014.

¶ 26    On October 18, 2022, the Bank filed both an Answer and Affirmative Defenses and a Motion for Summary Judgment, with a supporting affidavit from George Driver IV, the assistant vice president and operations consultant in the legal order and case resolution operations group at the Bank.  Driver swore that, on or around November 29, 2014, the Bank changed Yun's account number from ***1314 to ***6816.  He further swore that the Bank did not receive any ACDVs relating to Yun's account from TransUnion or from any other credit reporting agency.

¶ 27    The Bank contended that the documents Yun had submitted in support of his third amended counterclaim were fraudulent.  Citing Driver's affidavit, the Bank maintained that the account number that Yun provided in his September 19, 2014, letter was not created until November 29, 2014.  Thus, the September 19, 2014, had to have been created by Yun sometime after November 29, 2014, and fraudulently back dated to September 19, 2014.  The Bank further maintained that the TransUnion logo purportedly stamped at the top of Yun's September 19, 2014, letter was fraudulent because that logo did not exist in September 2014.  It further contended that the ACDV form that Yun had produced was complete, unsigned, and appeared to have been produced form a Google image search; it was not an ACDV form sent by TransUnion to the Bank, as Yun had falsely claimed.

¶ 28    On November 3, 2022, Yun filed a motion for summary judgment.  Yun supported his motion with an affidavit in which Yun swore that 1) the Bank had committed billing errors by adding 14 "fake charges" to his account in November and December 2012,  2) Yun notified the Bank of these errors in February and March of 2013 and demanded that the Bank correct them, 3)

8

the Bank did not respond, and 4) Yun informed TransUnion of the billing errors on September 19, 2014, and confirmed with TransUnion that the Bank did not respond to its failure to investigate. In his motion, Yun argued that summary judgment should be granted in Yun's favor because the Bank had pleaded "no contest" to Yun's FCRA claim in one of its previous filings, thereby conceding that it had violated the FCRA by failing to respond to TransUnion's request for investigation. Yun argued that Driver's averment in his affidavit that the Bank had not received TransUnion's request for investigation was false and could not be used to contradict the Bank's prior admission to the contrary. The trial court entered and continued Yun's motion until after the court had ruled on the Bank's motion.

¶ 29     On November 21, 2022, Yun filed his opposition to the Bank's motion for summary judgment. He submitted no affidavits in support of the motion. Yun argued that judgment should be entered in his favor because the Bank had pleaded "no contest" to Yun's FCRA claim. He denied that any of the documents he submitted in support of his counterclaim were fraudulent, and he claimed that the Bank had fraudulently created the new account number.

¶ 30     After the Bank filed its reply, Yun filed a motion to strike Driver's affidavit.

¶ 31     On December 5, 2022, the Bank filed a "Notice of Confidential Information Within Court Filing" pursuant to Supreme Court Rule 138 (eff. Jan. 1, 2018). In that document, the Bank disclosed the entire 16-digit account number that it claimed was created when the Bank charged off Yun's initial (delinquent) account on November 29, 2014 (*i.e.*, the number ending in "6816"). The first seven digits of this number were the same as the fist seven digits of Yun's initial account number. However, the remaining nine digits were different.

¶ 32     On January 9, 2023, the trial court denied Yun's motion to strike, denied Yun's motion for summary judgment, and denied the Bank's motion for summary judgment.

9

¶ 33        On January 19, 2023, the Bank filed a motion for sanctions. The Bank submitted Driver's prior affidavit in support of the motion. The Bank argued that, because of the fraud perpetrated by Yun, the trial court should reconsider its ruling denying the Bank's motion for summary judgment and enter sanctions against Yun.

¶ 34        On April 17, 2023, the Court granted the Bank's motion for sanctions, finding that Yun had committed fraud on the court by submitting fraudulent and fabricated documents in response to the Bank's motion for summary judgment and in other pleadings. The fabricated documents at issue were the September 19, 2014, letter that Yun claimed to have sent to TransUnion, the second version of that letter with TransUnion's logo purportedly stamped at the top, and the purported "Automated Consumer Dispute Verification Form" dated September 26, 2014. The trial court found that Yun's testimony was not credible. As a sanction for Yun's fraud, the trial court struck both versions of the purported September 14, 2014, letter and the purported "Automated Consumer Dispute Verification Form."

¶ 35        The trial court directed the Bank's counsel to prepare a proposed order reflecting its rulings. The Bank's counsel subsequently drafted a proposed order and submitted it to the court. The court confirmed that the proposed Order prepared by the Bank's counsel correctly reflected the court's ruling.

¶ 36        On April 24, 2023, the trial court entered a written order explaining the reasons for its imposition of sanctions against Yun, as required by Illinois Supreme Court Rule 137(d) (eff. Jan. 1, 2018) and Illinois Supreme Court Rule 219(c) (eff. July 1, 2002). In the four page order, the trial court stated that the September 19, 2014, letter submitted by Yun was fabricated because the account number that Yun provided in that letter did not exist until November 2014. The court found that it was not believable that Yun had merely made a "typo" that coincidentally matched

all of the digits of the 6186 number. The court noted that the 6186 number had been part of the record for years, and that Yun himself had acknowledged the existence of the number in documents that he filed with the court. The court further noted that the TransUnion logo purportedly stamped at the top of Yun's second submitted letter did not exist prior to his September 2014 letters.

¶ 37     The court further found that the purported ACDV form that Yun submitted was also fabricated. The court noted that the form was "missing several fields of required information, including a Subscriber Code, a Control Number, Yun's social security number, a DF Contract number, a Dispute Code, and FCRA relevant information." The court further found that the account history sections of the Yun ACDV matched a sample ACDV form that was available online exactly, "down to the last 1, 0, and blank box." The court concluded that "[t] is clear Yun copied the Sample ACDV history and reproduced it in his own form to create the Yun ACDV."

¶ 38     The court summarized its findings and its ruling by stating, in pertinent part,

"As evidenced by the record in the case, the documents that Yun has submitted in support of his FCRA claim were fabricated after-the-fact, in a clear perpetration of fraud on this Court and [the Bank]. As a result of perpetrating this fraud on the Court and [the Bank], Yun is hereby sanctioned. As a sanction, the three documents in issue  *** are hereby stricken."

¶ 39     The trial court then found that, because the documents that Yun had presented in support of his FCRA claim had been stricken, "Yun does not have — and cannot maintain — a claim against [the Bank] for alleged violations of the FCRA." The court found that there was no dispute of material fact and that Yun's FCRA claim failed as a matter of law. Yun had presented no evidence to support his FCRA counterclaim. Accordingly, the court granted the Bank's motion for summary judgment.

11

¶ 40     This appeal followed.

¶ 41                              II. ANALYSIS

¶ 42     On appeal, Yun argues that the trial court abused its discretion by imposing sanctions against him under Rules 137 and 219(c).  A trial court's determination as to whether Rule 137 has been violated is reviewed under the manifest weight of the evidence standard.  *Stiffle v. Baker Epstein* Marz, 2016 IL App (1st) 150180, ¶ 29; *Sanchez v. City of Chicago*, 352 Ill. App. 3d 1015, 1020–21 (2004). A judgment is against the manifest weight of the evidence "where the opposite conclusion is clearly evident or where the finding is unreasonable, arbitrary, or not based on the evidence presented." *Stiffle*, 2016 IL App (1st) 150180, ¶ 29; *In re Estate of Bennoon*, 2014 IL App (1st) 122224, ¶ 70.

¶ 43     A trial court's decision whether to impose sanctions is within the court's sound discretion, and its decision will not be disturbed absent an abuse of discretion.  *Law Offices of Brendan R. Appel, LLC v. Georgia's Restaurant and Pancake House*, 2021 IL App (1st) 192523, ¶ 15.  A trial court exceeds its discretion regarding the imposition of sanctions under Rules 137 and 219 only where no reasonable person would take the view adopted by the trial court. *Id*.; *In re Marriage of Sadovsky*, 2019 IL App (3d) 180204, ¶ 23; *Senese v. Climatemp, Inc.*, 289 Ill. App. 3d 570, 582 (1997) ("if reasonable people would differ as to the propriety of the court's action, a reviewing court cannot say that the trial court exceeded its discretion").  When considering the propriety of a trial court's imposition of sanctions, a reviewing court determines "whether the trial court's decision was informed, based on valid reasoning, and follows logically from the facts." *Technology Innovation Center, Inc. v. Advanced Multiuser Technologies Corp.*, 315 Ill. App. 3d 238, 244, 247 (2000).

¶ 44     The trial court's finding that the documents at issue in this case were fraudulent and were fabricated by Yun was not against the manifest weight of the evidence. Each of the letters that Yun presented to the trial court bore a date of September 19, 2014. In each letter, Yun provided what he claimed to be the first 12 digits of his account number. The 12-digit series of numbers provided by Yun that matched the first 12 digits of the number that the Bank created when it charged off Yun's unpaid account balance. According to Driver's affidavit, that number was not created until November 29, 2014, more than two months after the date provided on Yun's letters.

¶ 45     Yun presented no evidence to contradict Driver's sworn statement on this point. Instead, he claims that, when he wrote the 12-digit number in the September 19, 2014, letter, he made a "typo" while attempting to write his initial account number. Yun notes that the first seven digits of his initial account number are the same as the first seven digits of the new account number that the Bank claims to have created in November of 2014. He concedes that the remining five digits of the account number he included in his letter are not in his initial account number. He maintains that his inclusion of those five numbers was merely a "typo."

¶ 46     Yun's claim strains credulity. Yun would have us believe that he accidentally typed the *exact same 5-digit string of numbers* contained in the new account number, which Yun concedes was unknown to him when he wrote the September 19, 2014, letter. One does not need to be a mathematician to know that the odds of that happening are vanishingly small.

¶ 47     Moreover, Yun provided no evidence, beyond his bare assertions, that the September 19, 2014, letter is authentic. He presented no e-mail or proof of mailing showing that he mailed or e-mailed a copy of the letter to TransUnion, no affidavit or documentation from a TransUnion employee confirming that TransUnion received the letter, and no e-mails or phone records

13

suggesting that he discussed the matter with someone at TransUnion. Nor did he submit an affidavit swearing to the letter's authenticity.

¶ 48     For these reasons alone, the court's finding that the letters were fraudulent fabrications was not against the manifest weight of the evidence.

¶ 49     In an attempt to avoid the inescapable conclusion that he backdated the letters, Yun asserts that the Bank fabricated the new account number after Yun drafted the September 19, 2014, letter. Throughout the litigation, the Bank had indicated that the final four digits of the new account number were "6816." Yun maintains that, when the Bank disclosed what it purported to be all 16 digits of the new account number on December 5, 2022, it merely appended the number "6816" to the 12-digit number contained in Yun's letter. Yun produced no evidence to support this claim. The claim is pure speculation. Accordingly, the trial court's decision not to credit the claim was not against the manifest weight of the evidence.

¶ 50     The second version of the September 19, 2014, letter that Yun presented to the court (*i.e.*, the version with the TransUnion logo stamped at the top of the page) is likely fraudulent for an additional reason. According to a press release on TransUnion's website, TransUnion did not begin using the logo affixed to Yun's letter until January 2015, several months after the date of Yun's letter. *TransUnion announces its new brand platform – Information for Good*, http://newsroom.transunion.com/transunion-announces-its-new-brand-platform--information-for-good/ (published 1/6/2015).[3] Yun submitted two documents purporting to show that TransUnion used the logo prior to September 19, 2014: (1) the cover page of what appears to be TransUnion's Annual Report Form 10-K; and (2) an undated credit score report for an unnamed

_____

[3] We may take judicial notice of TransUnion's statements on its website regarding the company's branding. See, *e.g.*, *Braun v. Aspide Medical*, 2020 IL App (1st) 200131, ¶ 36; *Innovative Garage Door Co. v. High Ranking Domains, LLC*, 2012 IL App (2d) 120117, ¶ 4 n.1.

14

individual that indicates that the individual's credit score was "created on 01/10/2014." Both documents bear the TransUnion logo included in the letter submitted by Yun. However, Yun did not authenticate these documents. Moreover, the 10K form cover page indicates that the PDF of that page was generated by "Stocklight," not by TransUnion. It is not clear when that cover page was created. In addition, the credit score document merely establishes that the individual's credit score was calculated in 2014. It does not indicate when *the document reporting that credit score* was generated.

¶ 51    Further, Yun provided no evidence, beyond his bare assertions, that the September 19, 2014, letter is authentic. He did not submit an affidavit or deposition testimony by a TransUnion employee swearing to the letter's authenticity and confirming that TransUnion sent the letter to the Bank or to Yun. Nor did he produce any e-mails or phone records suggesting that a TransUnion employee sent the letter to the Bank or discussed the matter with the Bank or with Yun.

¶ 52    In addition, Yun did not present the letter with the TransUnion logo until more than three years after he first submitted the identical letter without the logo. He submitted the letter with the logo for the first time immediately after the trial court gave him 48 hours to produce additional evidence showing that TransUnion had sent notice of Yun's dispute to the Bank or face dismissal of his claim. Yun's FCRA counterclaim could not proceed without such a showing. Yun argued that the TransUnion "stamp" at the top of the letter (*i.e.*, the logo) proved that TransUnion had sent the required notice. The timing of Yun's disclosure of this letter is suspicious.

¶ 53    Further, there are good reasons to believe that the "Automated Consumer Dispute Verification Form" provided by Yun is also fraudulent. Several fields in the form are not filled in, and the fields that are filled in are identical to those included in the sample form posted on TransUnion's website. The document submitted by Yun appears to be merely a copy of the sample

15

form.  Yun provides what he purports to be an explanation for this, but his explanation is unsupported and unpersuasive.

¶ 54    Moreover, Yun provided no affidavit or sworn testimony by a TransUnion official that the form was sent to the Bank, and he declined to depose a Bank witness who would be able to confirm whether the Bank received the form.

¶ 55    For all these reasons, the trial court's finding that the purported letters and the "Automated Consumer Dispute Verification Form" submitted by Yun were fraudulent was not against the manifest weight of the evidence.

¶ 56    The trial court's decision to strike these fraudulent documents as a sanction was not an abuse of discretion.  "Outright fraud on the courts of this State is not to be countenanced."  *Tomm's Redemption v. Park*, 333 Ill. App. 3d 1003, 1010 (2002).  Rule 137 provides that a party's signature on a pleading constitutes a certificate by him that the pleading is "well-grounded in fact," and it authorizes the court to impose an "appropriate sanction" when a pleading is signed in violation of this rule.  Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018)).  Yun caused the Bank to expend considerable resources and wasted a substantial amount of the trial court's valuable time on a sham FCRA claim based on fabricated documents.  It goes without saying that the trial court did not abuse its discretion in striking the fraudulent documents.  Indeed, a greater sanction would have been justified.

¶ 57    Yun's remaining arguments fail.  He contends that the Bank made a judicial admission that his FCRA claim was meritorious.  That is incorrect.  The excerpt from the record cited by Yun in support of this contention was a statement that the Bank's counsel made to the trial court on one occasion during a hearing.  In that statement, the Bank's counsel merely admitted that the FCRA created a private right of action.  He did not concede that Yun's FCRA claim had merit.

16

¶ 58    Yun further argues that the Bank's motion for sanctions was barred under the doctrine of *res judicata*. He notes that the Bank's motion for summary judgment included the same arguments of fraud that formed the basis of the Bank's subsequent motion for sanctions. He contends that the trial court resolved this issue against the Bank when it initially denied the Bank's motion for summary judgment, thereby precluding the Bank from relitigating the issue.

¶ 59    This argument fails. The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction is conclusive as to the rights of the parties and their privies and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action. *Nowak v. St. Rita High* School, 197 Ill. 2d 381, 389 (2001). *Res judicata* does not apply here. The trial court's initial denial of the Bank's summary judgment motion was not a final judgment. Thus, it could be revisited and reversed by the trial court at any time prior to final judgment. In addition, the trial court's initial denial of summary judgment merely found that there were material factual disputes that had to be litigated; it did not make findings as to any of those factual issues.

¶ 60    Yun further maintains that the trial court did not provide a written explanation of the reasons for the imposition of sanctions, as required by Rule 137. This claim is flatly contradicted by the record. Contrary to Yun's assertion, the trial court issued a written order explaining that it was striking the documents that Yun had submitted in support of his FCRA claim because the court found them to be fabricated after the fact, in a clear perpetration of fraud on the court and on the Bank.

¶ 61    Yun further argues that, after the trial court directed the Bank's counsel to draft a proposed order memorializing the court's initial ruling from the bench, the Bank's counsel committed fraud on the court by drafting an order that did not reflect the trial court's ruling. This claim is baseless.

17

After drafting the order, the Bank's counsel asked the trial court to confirm that the order correctly reflected the court's ruling, and the trial court ruled that it did.

¶ 62 The trial court did not err in granting summary judgment in favor of the Bank. To survive a motion for summary judgment, a plaintiff must present a valid factual basis for his claim; the mere suggestion that a genuine issue of material fact exists, without valid supporting evidence, is not sufficient. See *McHenry Savings Bank v. Moy*, 2021 IL App (2d) 200099, ¶ 21; *Abrams v. City of Chicago*, 211 Ill. 2d 251, 257 (2004) ("If the party moving for summary judgment supplies facts that, if not contradicted, would warrant judgment in its favor as a matter of law, the opposing party cannot rest on its pleadings to create a genuine issue of material fact.") Mere speculation or conjecture will not suffice. *Price v. Lunan Roberts, Inc.*, 2023 IL App (1st) 220742, ¶ 25 ("[s]peculation is insufficient to overcome a motion for summary judgment"); *Barrett v. FA Group, LLC*, 2017 IL App (1st) 170168, ¶ 26 ("[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment").

¶ 63 In his affidavit, Driver swore that the Bank never received an ACDV from TransUnion communicating Yun's billing dispute requiring the Bank to investigate the errors asserted by Yun. As noted above, the documents that Yun presented in support of his FCRA claim were fraudulent and were properly stricken. Yun was unable to present evidence to establish each essential element of his FCRA claim, and he failed to raise a genuine issue material fact. Accordingly, the trial court properly denied Yun's motion for summary judgment and granted summary judgment in favor of the Bank.

¶ 64 III. CONCLUSION

18

¶ 65    For the foregoing reasons, we affirm the circuit court of Will County's imposition of sanctions, its granting summary judgment for the Bank, and its denial of Yun's motion for summary judgment.

¶ 66    Affirmed.